[Civ. No. 2192. Fifth Dist. Dec. 6, 1974.]

GLOBE INDEMNITY COMPANY, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Noriega, Clifford, Jenkins, Stanton & Brown and Thomas M. Stanton for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, R. H. Connett, Deputy Attorney General, Gordon A. Drescher and Alfred G. Mortimore for Defendants and Respondents.

## OPINION

**THOMPSON, J.**\*—Plaintiff Globe Indemnity Company, hereinafter referred to as Globe Indemnity, appeals from a judgment decreeing that by

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

virtue of certain policies of insurance it issued it will become obligated to satisfy any money judgment, to the extent of the limits of the policies, defendant State of California, hereinafter referred to as State, obtains against defendants Floyd Wheat, Wilkinson & Company, Lloyd Eddings and Elzy Weaver, hereinafter referred to as insureds, for fire suppression costs.

The situation in which the present case has its genesis is novel from both a factual and legal stance. On July 30, 1969, as the result of the alleged negligence of the insureds, a fire was kindled by the insureds and was permitted to spread to adjoining property not owned by the insureds. On October 26, 1970, the State, pursuant to section 13009 of the Health and Safety Code, brought suit in Kings County seeking to recover from the insureds the fire suppression costs incurred by the State in controlling the fire.[1] Globe Indemnity, which had issued both comprehensive personal insurance and comprehensive general liability insurance policies to Floyd Wheat and Wilkinson & Company, brought the present declaratory relief action in Kern County to determine whether the fire suppression costs claimed by the State were covered by either policy issued by Globe Indemnity.

The trial court, after appropriate findings of fact, entered judgment against Globe Indemnity decreeing that the policies extended coverage to the risk attendant to fire suppression costs incurred by the State.

Globe Indemnity appeals on what is essentially a judgment roll appeal, no reporter's transcript being furnished. Portions of the policies in question were attached as exhibits to the complaint; the existence of the policies was denied by the State on information and belief but was admitted by the insureds. Inasmuch as the record before us, taken in its entirety, furnishes us with sufficient information to consider certain portions of the case on its merits, we shall do so.

The crucial language in each of the two policies, deleting immaterial matters, is set forth in the court's findings of fact as follows:

The comprehensive general liability insurance policy: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury or . . .

---

[1]At the time the action seeking to recover the fire suppression costs was brought, section 13009 read as follows: "The expenses of fighting any fires mentioned in Sections 13007 and 13008 are a charge against any person made liable by those sections for damages caused by such fires. Such charges shall constitute a debt of such person, and is collectible by the person, or by the federal, state, county, or private agency, incurring such expenses in the same manner as in the case of an obligation under a contract, expressed or implied."

property damage to which this insurance applies, caused by an occurrence, . . ."

The comprehensive personal insurance policy: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, . . ."

We make these preliminary observations. It clearly appears that the word "occurrence" as used in both policies would include the fire which allegedly was kindled and was permitted to spread to adjoining property as a result of the negligence of the insureds. Upon this premise, Globe Indemnity would have been liable for the damage to the adjoining property; it is not contended otherwise.

In the present case, the constitutionality of section 13009 of the Health and Safety Code is not in question. (See *County of Ventura* v. *So. Cal. Edison Co.*, 85 Cal.App.2d 529, 533-540 [193 P.2d 512].) Nor do the parties argue that the fire did not escape to property belonging to others. (See *People* v. *Williams*, 222 Cal.App.2d 152, 154-155 [34 Cal.Rptr. 806].) ■ We further conclude that absent any statute, one protecting his own property has the right to recover fire suppression costs from the wrong-doer. (*People* v. *Wilson*, 240 Cal.App.2d 574, 576 [49 Cal.Rptr. 792]; see *United States* v. *Chesapeake & O. Ry. Co.* (4th Cir.) 130 F.2d 308, 310.) ■ Under the authority of *People* v. *Zegras*, 29 Cal.2d 67, 68-69 [172 P.2d 883], it is equally clear that section 13009 of the Health and Safety Code merely provides a method whereby fire suppression costs might be recovered, which is governed by the procedure applicable to a suit upon a contract, express or implied, and does not constitute a declaration that the recovery sounds in contract instead of tort.

With these observations in mind, we shall examine the provisions of the policies in question. Since there is no significant difference in the language of the policies as they apply to this case, we shall consider them as one.

■ The trial court found that the sum claimed by the State for fire suppression costs was covered by the policies of insurance issued by Globe Indemnity. We are not bound by such a trial finding inasmuch as the issue in this case turns upon the interpretation of a written contract without the aid of any conflicting extrinsic evidence. (*Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Moss Dev. Co.* v. *Geary*, 41 Cal.App.3d 1, 8-9 [115 Cal.Rptr. 736].) Nevertheless, we believe that the trial court's interpretation is correct.

It is undisputable that contracts of insurance are subject to well-defined rules of construction. These are set forth in numerous appellate decisions, and we cite from *State Farm Mut. Auto. Ins. Co.* v. *Johnston,* 9 Cal.3d 270, 274 [107 Cal.Rptr. 149, 507 P.2d 1357]: "As said in *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, at pages 437-438 [296 P.2d 801, 57 A.L.R.2d 914]: 'It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.] If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citation.] If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the *doubt* relates to extent or *fact of coverage,* whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], *the language will be understood in its most inclusive sense, for the benefit of the insured.'* (Italics added.)"

The record discloses that the policies of insurance in this case were standard insurance policies meeting every test of contracts of adhesion. (Kessler, *Contracts of Adhesion* (1943) 43 Colum.L.Rev. 629, 637.) ▮ Contracts of adhesion require careful scrutiny as to the existence of any ambiguity, and if an ambiguity is found it must be resolved in favor of the insured. (*Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 269-271 [54 Cal.Rptr. 104, 419 P.2d 168]; *Schmidt* v. *Pacific Mut. Life Ins. Co.,* 268 Cal.App.2d 735, 737-738 [74 Cal.Rptr. 367].) We find such an ambiguity here. The policies state that the insurer will pay "all sums which the insured shall become legally obligated to pay as damages because of" property damage caused by an occurrence. Undoubtedly, the fire itself would be an "occurrence" within the meaning of the policies.

In insurance policies containing substantially similar language to that contained in the policies in the present case the California Supreme Court has said the word "property" refers to physical or tangible property. (*Hogan* v. *Midland National Ins. Co.,* 3 Cal.3d 553, 562 [91 Cal.Rptr. 153, 476 P.2d 825]; *Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.,* 63 Cal.2d 602, 604, 609 [47 Cal.Rptr. 564, 407 P.2d 868]; *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.,* 51 Cal.2d 558, 565-566 [334 P.2d 881].) The question becomes whether it is "semantically permissible" to say fire suppression costs collectible under section 13009 of the Health and Safety Code are sums the insureds became legally obligated to pay *because of* damage to tangible property.

At the time of the fire in question, one only became liable under section 13009 of the Health and Safety Code for fire suppression costs if the fire

escaped to property belonging to others and caused damage thereto. (Health & Saf. Code, §§ 13007, 13008, 13009; *People* v. *Williams, supra,* 222 Cal.App.2d 152, 155.)

The trial court found that the fire in question escaped to property belonging to others and, in essence, that most, if not all, of the property destroyed by the fire was tangible in character. The court also found that all of the costs incurred by the State in suppressing the fire were expended to prevent further damage to tangible property, including tangible property belonging to the State. ■ On a judgment roll appeal, these findings are not subject to challenge, it being presumed that the evidence supports the findings. (*Associated Creditors' Agency* v. *Dunning Floor Covering, Inc.,* 265 Cal.App.2d 558, 559 [71 Cal.Rptr. 494].)

We note that the policies in the present case extend coverage "to all sums which the insureds become legally obligated to pay as damages because of" property damage, and the coverage is not limited solely to damages to property.

Since liability for fire suppression costs under section 13009 of the Health and Safety Code can arise only if the fire causes *damage to property* belonging to others, since most, if not all, of the property belonging to others damaged by the fire was tangible in character, and since all of the fire suppression costs in question were expended to prevent further damage to tangible property, it can be said that the insureds became legally obligated to pay these fire suppression costs *because of* damage to tangible property. Accordingly, these costs should be considered a sum recoverable under the policies.

■ Another cardinal rule in the interpretation of insurance contracts is that a policy of insurance must be interpreted in the light of the reasonable and normal expectations of the parties as to the extent of the coverage. (*Atlantic Nat. Ins. Co.* v. *Armstrong,* 65 Cal.2d 100, 112 [52 Cal. Rptr. 569, 416 P.2d 801].) In our case the policy recites that Globe Indemnity will pay all sums "caused by an occurrence" because of "property damage." When an insured takes out an indemnity policy, as in this case, it is more reasonable to suppose that he expects to be protected by his insurance in any situation wherein he becomes liable for damage to tangible property. It would seem strangely incongruous to him, as it does to us, that his policy would cover him for damages to tangible property destroyed through his negligence in allowing a fire to escape but not for the sums incurred in mitigating such damages by suppressing the fire.

We cannot conceive as reasonable a rule of law which would encourage an insured property owner not to report that neighboring property was be-

ing destroyed by reason of his negligence in permitting a fire to escape from his property because his insurance would cover him for the property damage but not for the fire suppression costs. We do not believe the facts of this case direct us to reach such an unreasonable and potentially stultifying conclusion.

▉ A rule, reasonably applied, permitting expenses incurred in the mitigation of damages to tangible property to be recoverable under policies insuring against liability incurred because of damages to tangible property would seem to require universal application as it encourages a most salutary course of conduct. Such a rule is statutorily recognized in a limited context in subdivision (b) of section 531 of the Insurance Code; this subdivision holds that an insurer is liable "[i]f a loss is caused by efforts to rescue the thing insured from a peril insured against."

Globe Indemnity also relies upon the case of *People* v. *United States* (9th Cir.) 307 F.2d 941, to support its interpretation of the policies. It is true that there are distinctly similar factual comparisons between the above case and our case. In the above case the State of California was suing to collect fire suppression costs from the defendant upon the basis of section 13009 of the Health and Safety Code. But there the similarities end and the differences begin. In *People* v. *United States, supra,* the suit was brought under the Federal Tort Claims Act, an act which narrowly and partially opened the door—a door which theretofore had been tightly closed—to litigants maintaining lawsuits against the United States. There, the jurisdiction of the United States District Court to entertain the action was limited to civil actions against the United States "for injury or loss of property." This language, however, is to be given a construction consistent with the purpose underlying the enactment of the Federal Tort Claims Act —to avoid injustice to those having meritorious claims theretofore barred by sovereign immunity and to eliminate the burden on Congress from investigating and passing upon private bills seeking individual relief. (*United States* v. *Muniz,* 374 U.S. 150, 154 [10 L.Ed.2d 805, 810, 83 S.Ct. 1850, 1853].) In our case, the suit is predicated on an insurance policy and the policy must be viewed in light of the premise that effect must be given to the reasonable expectations of the parties and every reasonable intendment favors resolution of any uncertainty in favor of the insured. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 269; *Atlantic Nat. Ins. Co.* v. *Armstrong, supra,* 65 Cal.2d 100, 112.)

▉ At the risk of being redundant, we reiterate that every intendment of Globe Indemnity's policies of indemnity appears to be to indemnify the insured for any liability sustained because of damages to tangible property;

no contrary intent can be found in the language of the policy. It appears inconceivable that the insured reasonably could have expected to have been insured against the liability of paying for the damages to tangible property resulting from a fire which, because of his negligence, spread to the property of another and not to have been insured against the liability imposed by section 13009 of the Health and Safety Code for the suppression costs incurred in fighting the fire.

Globe Indemnity also urges as a ground for reversal that defendants Eddings and Weaver, employees of codefendants Wheat and Wilkinson & Company, were not entitled to coverage because they do not fall within the category of "persons insured" under either of the Globe Indemnity policies issued to Wheat and Wilkinson & Company.

In face of the entire absence of a record upon the point, we are relegated to an examination of the findings of fact and conclusions of law and the pleadings. ■ The court found that for the purpose of this litigation only, defendants Eddings and Weaver were employees of Wheat and Wilkinson & Company and were acting in the course and scope of their employment, and that the Globe policies covered persons so employed.

In a portion of the comprehensive general liability insurance policy, which was made a part of the complaint, we find the following language:

"I. . . .

"Exclusions

"This insurance does not apply: (a) to liability assumed by the insured under any contract or agreement *except an incidental contract;* . . ." (Italics added.)

The foregoing language, bolstered by other evidence not before us, could show that defendants Eddings and Weaver not only were employed by defendants Wheat and Wilkinson & Company but that the employers, pursuant to an "incidental contract"—one plainly collateral to and independent of the principal agreement of employment (see *Medico-Dental etc. Co.* v. *Horton & Converse,* 21 Cal.2d 411, 422 [132 P.2d 457])—agreed to assume liability for all acts of Eddings and Weaver done within the scope of their employment. Absent any trial record, we must presume the trial court's finding that Eddings and Weaver were entitled to coverage was supported by adequate evidence (*Associated Creditors' Agency* v. *Dunning Floor Covering, Inc., supra,* 265 Cal.App.2d 558, 559); accordingly, suf-

ficiency of the evidence to support the finding cannot be controverted. (*Estate of Miller,* 243 Cal.App.2d 352, 353 [52 Cal.Rptr. 242].)

The judgment is affirmed.

Franson, J., concurred.

**BROWN (G. A.), P. J.**—I dissent.

The narrow question in this case is whether fire suppression costs for which an insured is made liable to the state by statute (see Health & Saf. Code, § 13009) for a negligently caused fire are covered by liability insurance policies under which the insurers agree to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage . . . caused by an occurrence, . . ."

The action brought by the State of California for recovery of fire suppression costs is one specified by the Legislature to be contractual in nature and which does not exist in the absence of statute. (Health & Saf. Code, § 13009; *People* v. *Wilson* (1966) 240 Cal.App.2d 574, 576-577 [49 Cal.Rptr. 792].)

The Supreme Court of California has thrice interpreted similar insurance policy language to cover damages to physical or tangible property only; as an intermediate appellate court, we are bound by those precedents. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

The first case is *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558 [334 P.2d 881] (referred to as *"Geddes I"*), which was an action brought by a building contractor against the liability insurance carrier for a manufacturer of aluminum doors, doorjambs and appurtenant hardware. In 76 houses the contractor installed 760 aluminum doors, doorjambs and accessory hardware which had been supplied by the manufacturer. Within a period of six months after installation defects appeared. In remedying the damage to the houses caused by the defective doors, the plaintiff incurred extraordinary expenses in removing, installing, repairing, storing and shipping the original doors and their replacements, and further damages consisting of loss by reason of increased office overhead, loss of profits and injury to goodwill. The plaintiff had obtained a judgment against the defendant's insured manufacturer in an action in which the defendant insurance company had refused to provide a defense;

plaintiff then brought the *Geddes I* action against the door manufacturer's insurance carrier to recover the amount of the judgment under the insurance policy issued by the carrier.

The insuring agreement of the policy involved in *Geddes I* obligated the defendant: " 'To pay on behalf of the Insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law or contract *because of* injury to or destruction of property, including the loss of use thereof, caused by accident.' " (Italics added.) (51 Cal. 2d at p. 562.) Thus, the pertinent language is identical to that in the case at bench.

Insofar as germane to the present case, the court in *Geddes I* held that the obligation of the insurance company under the public liability insurance policy to pay on behalf of its insured sums which the insured is legally obligated to pay "because of . . . property damage" is limited to damage to physical or tangible property and does not cover such items as increased overhead, loss of profits or goodwill. Importantly, the court rejected the view that coverage existed for damage to such intangible property interest if a showing was made that "but for" damage to tangible property, it would not have occurred, thus rejecting the concept that coverage is co-extensive with the consequential damage suffered by an insured. The court said: "Plaintiff's judgment against the insured was not limited to such damages. In addition to costs of removal of the doors and loss of use of the houses, it included the other costs of handling the defective doors and their replacements, loss of profits, and loss of goodwill. Plaintiff contends, however, that these additional items of damages constituted damages to its business and goodwill and were therefore damages 'because of injury to or destruction of property.' We cannot agree with this contention.

"When coverage C is read in the light of the exclusions applicable thereto, it is clear that the word property refers to physical or tangible property. Thus it is such property, not goodwill or a business entity, that is ordinarily thought of as the subject of use, and it is to damage to such property that all of the exclusions are directed. Any breach of contract may harm the business of the injured party, and if sufficiently serious, may affect his goodwill. *Such damages, however, are not commonly thought of as injuries to or destruction of property within the meaning of a public liability insurance policy . . . . Such damages are no less outside the coverage of the policy because there was also damage to the houses.*" (Italics added.) (51 Cal.2d at pp. 565-566.)

The issue raised in *Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.* (1965) 63 Cal.2d 602 [47 Cal.Rptr. 564, 407 P.2d 868] (referred

to as *"Geddes II"*) was whether the trial court correctly applied the measure of damages set forth in *Geddes I.* The court reaffirmed its earlier decision that the insurance carrier was only liable for damages to tangible or physical property, but stated it would allow recovery for damage to other property interests if the damage provided a measure of monetary damage to the tangible or physical property in question. The court said, at page 609: "However, defendant asserts that this overhead represents an injury to plaintiff's business, and that no part of it is recoverable under our previous decision because it does not constitute damage to physical or tangible property. This contention confuses two issues which should be carefully distinguished: the first concerns the type of injury covered by the policy, and it was in the context of this question that we stated that only damage to physical or tangible property was recoverable; the second is the method by which the damage to the physical property is to be measured in monetary terms. [¶] . . . . Neither the salaries of the workmen nor the expenses of overhead are themselves physical property; they are recoverable because they provide a measure of the dollar amount of the injury to the houses."

The *Geddes* cases and *Hogan* hold that recovery is limited to damages to physical or tangible property and does not extend to damages to nonphysical or intangible property. Those cases deny recovery because the damages there involved, just as in the case at bench, were not damages to physical property. Thus, the court excluded coverage for all damages other than damages to physical property or those that may properly be used as a measure of damages to physical property. The decision herein violates those principles. The majority in substance has made the coverage under the policy coextensive with the amount of damages the insured may be liable for "because of" the negligently caused fire. In addition to being contrary to the two *Geddes* cases and *Hogan,* I believe such an approach is unwarranted and unsound in principle and opens the door to the extension of coverage to losses which, though tangentially resulting from the negligence of the insured, are only indirectly related to the physical damage to property. It is undoubtedly this concern the Supreme Court had in mind in the two *Geddes* cases and in *Hogan* in limiting the coverage to damage to physical property.

The language in question is clear and unambiguous, and its terms must be effectuated. (*Canadian Indem. Co.* v. *West. Nat. Ins. Co.* (1955) 134 Cal.App.2d 512, 516-517 [286 P.2d 532].) The issue is not what the insured may be liable for as a result of a fire, such as suppression costs incurred by the State of California arising by reason of a separate statutory obligation, but what the terms of the insurance contract provide. In this

respect, the courts should not indulge in remaking the contract for the parties simply because an insurance company is a party. As the court aptly said in *Canadian Indem. Co.* v. *West. Nat. Ins. Co., supra,* at pages 516-517: "It is true that as between the insurer and the assured, a policy is to be construed most strictly against the insurer if the language used in the policy is ambiguous. But, as said in *Wendt* v. *Wallace,* . . . [188 Minn. 488 (247 N.W. 569)], a case cited by appellant, if the langauge is clear, it is the duty of the court to give it effect, and this duty cannot be ignored because of the fact that an insurance company is a party to the action. This rule is enunciated in *Carabelli* v. *Mountain States Life Ins. Co.,* 8 Cal. App.2d 115, 117 [46 P.2d 1004], where it is said that where 'terms are plain and explicit, the courts cannot create a new contract for the parties by a forced construction of such plain and explicit terms. Thus the rule of liberal construction in favor of the insured can only have application when the policy presents some uncertainty or ambiguity.' "

The interpretation of the insurance policy language to cover items of loss other than injury to tangible property could lead to absurd results. For example, if a third party should suffer personal injuries while trying to save his property from a negligently caused fire, he would have an action for personal injuries against the insured under the "rescue doctrine." (*Solgaard* v. *Guy F. Atkinson Co.* (1971) 6 Cal.3d 361, 368 [99 Cal.Rptr. 29, 491 P.2d 821].) The injuries would clearly be "because of" the negligent damage to the property under the elastic interpretation of that term in the majority opinion. Yet it obviously would be absurd to say the property damage coverage under the policy extended to such personal injuries.[1]

Finally, the court mentions Insurance Code section 531, subdivision (b). That section is totally inapposite to this case, having application to first party insurance contracts only, such as a fire insurance policy. The one conclusion that may be drawn from its existence is that had the Legislature intended the costs of rescue to be recoverable under a third-party liability policy, such as in the case at bench, similar legislation would have been enacted. The absence of such enactment may be taken as an implied intention by the Legislature that such costs should not be recoverable.

I would reverse the judgment.

---

[1]The policy, of course, has separate personal injury coverage. This fact, however, does not diminish the efficacy of the illustration posed, inasmuch as suppression costs are no more damage to property than are personal injuries.