**VONS COMPANIES INC., a Michigan Corporation, Plaintiff—Appellant,**

v.

**AETNA CASUALTY & SURETY COMPANY, a Connecticut Corporation; Travelers Casualty and Surety Company, Formerly Known as Aetna Casualty and Surety Company, Defendants—Appellees.**

No. 01–56791.

D.C. No. CV–00–11672–GHK.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 2002.

Decided Jan. 28, 2003.

Rehearing Denied April 18, 2003.

Before REINHARDT, O'SCANNLAIN and PAEZ, Circuit Judges.

### MEMORANDUM [*]

Vons Companies Inc. ("Vons") appeals from the district court's grant of summary judgment in favor of Aetna Casualty and Surety Company and Travelers Casualty and Surety Company ("Aetna"). The facts and prior proceedings are known to the parties, and are restated herein only as necessary.

### I

### A

■ Vons' primary argument on appeal is that the insurance policy—which provides coverage for sums Vons "shall become legally obligated to pay as damages ... because of property damage [or] personal injury ... caused by an occurrence"—covers the sums they were required to pay to Foodmaker pursuant to a settlement agreement. Foodmaker sued Vons for lost profits, and those profits, the argument goes, were lost "because of" the personal injury to Foodmaker's customers; hence, the policy covers the settlement. Vons argues that the policy should be read coextensively with the insured's legal liability for damages causally linked to covered property damage or bodily injury.

In *Geddes & Smith, Inc. v. Saint Paul Mercury Indemnity Co.*, 51 Cal.2d 558, 334 P.2d 881 (1959) (hereinafter *Geddes I*), the California Supreme Court had occasion to interpret a near-identical CGL policy,

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

which required the insurer to indemnify the insured for losses incurred "because of injury to or destruction of property." In that case, the insured was a door manufacturer required to pay to a contractor certain sums, including lost profits, incurred because of the contractor's inability to perform other work while replacing the defective doors. While the California Supreme Court allowed recovery for physical damage to the houses which resulted from the defective doors, it did *not* allow recovery for lost profits. The court wrote:

> [T]he word property refers to physical or tangible property. Thus it is such property, not goodwill or a business entity, that is ordinarily thought of as the subject of use, and it is to damage to such property that all of the exclusions are directed. Any breach of contract may harm the business of the injured party, and if sufficiently serious, may affect his goodwill. *Such damages, however, are not commonly thought of as injuries to or destruction of property within the meaning of a public liability insurance policy.*

*Id.* at 565–66, 334 P.2d 881 (emphasis added). Vons argues that *Geddes I* stands only for the proposition that "property" does not include intangible loss, and therefore it has nothing to do with the issue in this case, which is whether or not lost profits are recoverable if they are "because of" covered property damage. However, in two subsequent cases, the Supreme Court has clarified the principle enunciated in *Geddes I*. In *Geddes & Smith v. Saint Paul Mercury Indemnity Co.*, 63 Cal.2d 602, 47 Cal.Rptr. 564, 407 P.2d 868 (1965) (hereinafter *Geddes II*), the Supreme Court revisited the issue of what damages came within the policy's coverage. The issue this time was whether overhead expenses incurred during the time the doors were being replaced were recoverable. The Supreme Court answered in the affirmative. "[Overhead is] recoverable because [it] provide[s] a measure of the dollar amount of the injury to the houses. Overhead is distinguished from lost profits and goodwill in that it represents not a potential asset of the business but an essential expense incurred in the performance of the work." *Id.* at 609, 47 Cal.Rptr. 564, 407 P.2d 868.

Lost profits are excluded from coverage because they do not provide a measure of tangible physical injury, and not simply because profit is not itself tangible. The Supreme Court reiterated this principle in *Hogan v. Midland National Ins. Co.*, 3 Cal.3d 553, 562, 91 Cal.Rptr. 153, 476 P.2d 825 (1970), writing that "*Geddes II* makes it clear that loss from damage to intangibles is recoverable only to the extent that it provides a measure of damages to physical property which is within the policy's coverage." Applying this principle to the facts of this case, it is clear that Foodmaker's lost profits are not a measure of damage to the personal injury suffered by its customers.

B

Alternatively, Vons argues that even if the district court's reading of the *Geddes* line is correct, it is no longer good law in light of more recent California precedent. It relies on two cases, *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990), and *Globe Indem. Co. v. California*, 43 Cal.App.3d 745, 118 Cal.Rptr. 75 (1974), for this proposition. Its reliance is misplaced.

First, both of these cases are reconcilable with the principle enunciated in *Hogan* that intangible losses are recoverable if they provide "the measure of damages to physical property which is within the policy's coverage." *Hogan*, 3 Cal.3d at 562, 91 Cal.Rptr. 153, 476 P.2d 825. In *AIU In-*

*surance,* the damages sought by the government were expenses for cleanup and response costs incurred pursuant to CERCLA. Those damages were the "measure" of the harm recoverable for the damage to tangible property. In *Globe,* the California Court of Appeal allowed an insured to recover for sums he was required to pay the city for negligently causing a fire. The *Globe* court permitted recovery because the sums paid were the measure of "expenses incurred in the *mitigation* of damages to tangible property." 43 Cal.App.3d at 752, 118 Cal.Rptr. 75 (emphasis added).

Second, and more importantly, the California Supreme Court's most recent pronouncements on the extent of coverage under a CGL policy make clear that the *Geddes* line of cases remain good law. In *Montrose Chem. Corp. v. Superior Court,* 6 Cal.4th 287, 303, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993), the Supreme Court harmonized *AIU Insurance* and the *Geddes* line when it explained that "a suit seeking recovery for injuries to intangible economic interests is not a suit 'of the nature and kind' covered by a CGL policy, whereas environmental contamination alleged under CERCLA is 'property damage' within the meaning of such a policy." The California Supreme Court, in fact, has repeatedly insisted that suits for lost profits simply do not come within the purview of a CGL policy. *See Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 17, 44 Cal. Rptr.2d 370, 900 P.2d 619 (1995) ("[A] suit seeking recovery for injuries to intangible economic interests is not a suit 'of the nature and kind' covered by a CGL policy."); *Kazi v. State Farm Fire & Cas. Co.,* 24 Cal.4th 871, 879, 103 Cal.Rptr.2d 1, 15 P.3d 223 (2001) ("[I]t is important to note that [CGL] policies are not intended to cover intangible property losses, including loss of an investment, loss of goodwill or loss of intangible property use."). In

short, the district court correctly read California Supreme Court precedent to foreclose Vons' argument for coverage.

## II

### A

Vons' second argument for coverage is that Foodmaker's damages were "because of" the "loss of use" of Foodmaker's "Jack in the Box" restaurants. Property damage is defined in the policy as "(1) physical injury to or destruction of tangible property ...; or (2) loss of use of tangible property, which has not been physically injured or destroyed provided such loss is caused by an occurrence during the policy period." Vons argues that the "Jack in the Box" restaurants are tangible property not injured or destroyed; Foodmaker lost the use of those restaurants because customers chose not to frequent the restaurants after the E. Coli outbreak; that lost use resulted in Foodmaker's lost profits against them; hence, Aetna is required to fund the settlement.

■ This argument fails because the "failure to perform" exclusion applies. The policy does "not apply ... to the loss of use of tangible property which has not been physically injured or destroyed, resulting from ... the failure of the Insured's products ... to meet the level of performance, quality, fitness or durability warranted or represented by the Insured." The exclusion clearly and unambiguously applies to the facts of this case, and Vons does not contend otherwise. Rather, Vons argues that the exception to the exclusion applies. The exception provides that the exclusion will not apply to loss of use of tangible property "resulting from the sudden and accidental physical injury to ... the Insured's products ... after such products or work have been put to use by

any person or organization other than the Insured."

Vons argues the exception applies anytime the alleged loss of use occurs *after* another person or organization (in this case, Foodmaker) puts the insured's products to use. *See United States Fire Ins. Co. v. Good Humor Corp.*, 173 Wis.2d 804, 496 N.W.2d 730 (1993). In other words, according to Vons, it does not matter *when* the sudden and accidental physical injury occurs, so long as the loss of use occurs after the products have been put to use by another, the exception applies.

This is incorrect. Clearly, the "sudden and accidental physical injury to ... the named insured's products" must occur *after* the product is put to use by another. The phrase "after such products or work have been put to use" modifies the immediately preceding clause. *See Harbor Ins. Co. v. Central Nat'l Ins. Co.*, 165 Cal. App.3d 1029, 1040, 211 Cal.Rptr. 902 (1985) ("[U]nder traditional rules of grammar and usage the antecedent to the modifying clause here comprises the immediately preceding list of torts."). In *Marglen Ind. Inc. v. Aetna Cas. and Surety Co.*, 4 Cal.App.4th 414, 428, 5 Cal. Rptr.2d 659 (1992), the California Court of Appeal clearly assumed that the sudden and accidental physical injury has to occur *after* the insured's product is put to use by another. *See also Riley Stoker Corp. v. Fidelity and Guaranty Ins. Underwriters*, 26 F.3d 581, 591 (5th Cir.1994) ("[T]he loss of use resulted from sudden and accidental physical injury to [the insured's] ... product *after* [the insured's] ... product had been put to use.") (emphasis added); *Commercial Union Ins. Co. v. R.H. Barto Co.*, 440 So.2d 383, 388 (Fl.App.Ct.1983) (rejecting argument that exception to exclusion applied because allegations that equipment broke down *after* put to use by another party was not a sudden and accidental physical injury). In short, we agree with the district court that the exclusion applies.

B

■ Finally, Vons argues that even if the district court correctly interpreted the exception, the exclusion nonetheless applies because Foodmaker's "sudden and accidental" act of undercooking the patties occurred *after* the product was put to use by another. Vons suggests the undercooking caused further injury to the patties because prior to undercooking the patties were, although contaminated, not yet in a state in which they were likely to be eaten. However, the two cases it relies on, *Armstrong World Ind., Inc. v. Aetna Cas. & Surety Co.*, 45 Cal.App.4th 1, 52 Cal. Rptr.2d 690 (1996) and *Shade Foods, Inc. v. Innovative Prod. Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 93 Cal.Rptr.2d 364 (2000), do not support Vons' argument. In both *Armstrong* and *Shade Foods*, the courts found that the incorporation of a defective product can result in injury to the *whole*, and *not* further injury to the incorporated product itself, as Vons contends. Its argument, while ingenious, is to no avail.

III

The judgment of the district court is AFFIRMED.