Filed 7/9/13  Chateau De Louis v. Everest Indemnity Co. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHATEAU DE LOUIS, LLC et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> EVEREST INDEMNITY INSURANCE COMPANY, <br><br> Defendant and Respondent. | A130349 <br><br> (San Francisco County <br> Super. Ct. No. CGC-08-476656) |

Chateau De Louis, LLC; No. Nine, LLC; and Real Enterprises, LLC (collectively, Chateau-Real) obtained an award, following an arbitration, against a contractor, Pinewave Construction (Pinewave).  Chateau-Real then filed suit against Pinewave's insurer, Everest Indemnity Insurance Company (Everest), for payment of the judgment, pursuant to Insurance Code section 11580.[1]  The trial court, following a bench trial, entered judgment for Everest.

Chateau-Real appeals, alleging the following errors:  (1) wrongful exclusion of evidence, not presented to the arbitrator, that parts of the arbitrator's award were for property damage; (2) wrongful denial of a trial by jury; (3) improper consideration of Chateau-Real's arbitration briefs as evidence; (4) lack of substantial evidence supporting the trial court's conclusion that the arbitration award was not for property damage; (5) insufficiency of the trial court's analysis supporting its conclusion that the part of the

_____

[1] Unless otherwise indicated, all subsequent statutory citations are to the Insurance Code.

1

arbitration award for loss of rents was not an award for property damage; (6) insufficient legal foundation for the trial court's conclusion that Chateau-Real's costs to mitigate health and safety conditions did not constitute property damage; and (7) lack of substantial evidence supporting an alternate ground for the court's judgment—that an exclusion in the insurance policy precluded coverage even if Chateau-Real had been able to show that the award was for property damage.

We find no merit in Chateau-Real's first six assertions of error, and thus need not reach the seventh assertion. The judgment of the trial court is affirmed.

## BACKGROUND

In August 2002, Chateau-Real and Pinewave entered into three separate contracts in which Pinewave agreed to construct three condominium buildings on lots owned by Chateau-Real. Pinewave was insured under a commercial general liability policy issued by Everest (the Everest policy) and effective from September 17, 2002 to March 17, 2004.

Pinewave demanded arbitration in June 2004, pursuant to its contracts with Chateau-Real, seeking payment allegedly owed for work performed on the construction project. Chateau-Real filed a counterclaim with the arbitrator, asserting that Pinewave had breached the contracts.

An arbitration hearing was held over three days in August 2005. No written record of the hearing was made.

At the arbitration, Chateau-Real introduced evidence of different categories of damages through photographs, its witnesses, and expert testimony. In the award decision by the arbitrator, certain damage amounts were deducted from the damages claimed by Chateau-Real. Accordingly, Chateau-Real obtained an arbitration award against Pinewave and, later, a revised award that corrected for some erroneous deductions. The award to Chateau-Real was broken down as follows: $549,349.86 for defects to be repaired; $300,000.00 for diminished value; $192,103.55 for mitigation costs; $125,966.64 for repair costs paid by Chateau-Real; $258,900.00 for defects that could not be valued; $174,000.00 for lost rents; and $210,908.56 for construction loan interest

2

costs. The total original award to Chateau-Real was $1,811,228.61, from which an award to Pinewave and credits accruing to Pinewave were deducted, for a net award to Chateau-Real of $1,540,865.11. After correction of erroneous deductions, the final award to Chateau-Real was increased to $1,790,631.05.

In November 2005, the arbitration award was reduced to a judgment in the San Francisco County Superior Court for a total of $1,799,829.66. The amount of the judgment in excess of the arbitration award was for accrued interest and costs.

On January 30, 2009, Chateau-Real filed its second amended complaint against Everest, asserting causes of action for: (1) payment of judgment pursuant to section 11580; (2) breach of the implied covenant of good faith and fair dealing; and (3) declaratory relief.

On January 12, 2010, Everest filed a motion to bifurcate, seeking a separate later trial on the second cause of action for breach of the implied covenant of good faith and fair dealing. Chateau-Real opposed the motion and it was denied "without prejudice to be raised before the trial judge." On July 2, 2010, the trial court addressed the bifurcation motion and other in limine motions. The court bifurcated the matter, ordering a bench trial on the section 11580 action and denying Chateau-Real's demand for a jury trial. In so ruling, the trial court stated: "[I]t is the usual role of judges sitting without juries to construe judgments and awards of other cases; and so too here. To do this, no trier of fact will evaluate evidence outside the record before the arbitrator. Thus the court, and not the jury, will determine the first cause of action."

During the bench trial, Chateau-Real called witnesses who testified about the content of their prior testimony at the arbitration. Briefs and other documentary evidence that had been submitted to the arbitrator were also admitted into evidence.

The trial court filed a statement of decision on September 20, 2010. The court concluded that Chateau-Real had not sustained its burden of proving that the underlying arbitration award included damages because of property damage and that exclusions in the Everest policy precluded coverage even if Chateau-Real had demonstrated the existence of otherwise covered property damage.

3

Judgment in favor of Everest was entered on October 1, 2010, and Chateau-Real filed its notice of appeal on November 8, 2010.

## DISCUSSION

### I. *Section 11580 Actions*

Section 11580 provides: "A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this state unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein. [¶] (a) Unless it contains such provisions, the following policies of insurance shall not be thus issued or delivered: [¶] (1) Against loss or damage resulting from liability for injury suffered by another person other than (i) a policy of workers' compensation insurance, or (ii) a policy issued by a nonadmitted Mexican insurer solely for use in the Republic of Mexico. [¶] (2) Against loss of or damage to property caused by draught animals or any vehicle, and for which the insured is liable, other than a policy which provides insurance in the Republic of Mexico, issued or delivered in this state by a nonadmitted Mexican insurer. [¶] (b) Such policy shall not be thus issued or delivered to any person in this state unless it contains all the following provisions: [¶] (1) A provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy. [¶] (2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

In order for a judgment creditor to recover from an insurance company in an action brought under the provision required by section 11580, subdivision (b)(2), the creditor must plead and prove the following: "1) it obtained a judgment for bodily injury, death, or property damage, 2) the judgment was against a person insured under a policy that insures against loss or damage resulting from liability for personal injury or insures

4

against loss of or damage to property caused by a vehicle or draught animal, 3) the liability insurance policy was issued by the defendant insurer, 4) the policy covers the relief awarded in the judgment, 5) the policy either contains a clause that authorizes the claimant to bring an action directly against the insurer or the policy was issued or delivered in California . . . ." (*Wright v. Fireman's Fund Ins. Companies* (1992) 11 Cal.App.4th 998, 1015.)

## II. *Evidence that the Arbitration Award was for Property Damage*

The primary issue on appeal relates to the first element of a section 11580 action—whether or not the underlying arbitration award was a judgment, at least in part, for property damage. The trial court determined that this question was one to be determined by the court, without consideration of any evidence beyond what was presented to the arbitrator: "[T]he judgment emanating from the underlying arbitration must be examined to determine whether any part of it awards damages for risks covered in the policy. The parties disagree whether a jury is required to hear this issue. [Chateau-Real] argue[s] that the trier of fact will hear factual disputes concerning the nature of damages at issue in the arbitration, and thus a jury is required. Defendant argues that construing the judgment is a matter of law, to be resolved by the court examining solely the face of the judgment. Defendant is correct in its conclusion, albeit not entirely in the reasoning. I find that (i) judges traditionally are required to construe judgments, a rule that applies here, and (ii) the trier of fact will not be exposed to evidence outside the record presented to the arbitrator."

Chateau-Real argues that the trial court erred by denying it the opportunity to present evidence, not presented to the arbitrator, concerning the damages that the arbitrator awarded.

The threshold issue in a section 11580 action is "whether the judgment, upon which plaintiff seeks to recover, represents damages of a type for which the insurer agreed to indemnify the contractor. The plaintiff is in court as a beneficiary of the contract between the contractor and the insurer, and must bring her claim—the judgment—within the terms of that contract." (*Rafeiro v. American Employers' Ins. Co.*

5

(1970) 5 Cal.App.3d 799, 805 (*Rafeiro*).) Chateau-Real contends that, in the case at hand, such a determination cannot be made solely on the basis of the arbitration record because issues of insurance coverage were not litigated in the underlying arbitration and it was unnecessary to present "evidence to the arbitrator which segregated in detail the specific nature, type or amount of property damage sustained by [Chateau-Real]." It is Chateau-Real's position that they should have been able to present evidence that portions of what the arbitrator awarded to them were compensation for the repair or mitigation of "property damage," within the meaning of the Everest policy, even though they were not labeled as such during the arbitration.

The trial court described Chateau-Real's position as follows: "[Chateau-Real's] . . . demand for a jury is premised in great part on their assumption that it is proper for the trier of fact to review (and weigh) evidence outside the record of the arbitration. For example, [Chateau-Real] suggest[s], assume the arbitrator was presented with evidence of, and awarded damages solely for, 'damaged' doors, without any specification of the type or cause of damage—a specification irrelevant to the arbitration, but critical to the determination whether the damage is or is not covered by the insurance policy. In such a case, it would be proper to present witnesses to testify on the specific type of damage, even if never presented to the arbitrator."

The trial court compared its task to that of interpreting an ambiguous prior judgment, in which case it would be proper to consider the entire record of the issuing court. But, the trial court opined, "it is not permissible to review evidence outside the record, for to do so would be to rely solely on speculation: One does not know what the original court would have done with the evidence. [Citation]." The trial court concluded: "It follows that in this case, ambiguities in the arbitration award may be explained by reference to the record before the arbitrator, but not by information not there presented. We will not re-litigate the underlying arbitration. Thus the evidence presented is not for the truth, but rather as evidence of the basis for the award. So, if an expert testified as such at the arbitration, and summarizes his testimony in this case, he is not testifying here as an expert; indeed his evidence could as well be provided by others with personal

6

knowledge of the proceedings. [Citation.] [¶] It also follows that if we had the written record of the arbitration, none of the witnesses there would be necessary in this trial. There being no written record, the only witnesses necessary in connection with this phase of the trial on the first cause of action are those required in effect to recreate that record."

We find no error in the trial court's determination that only the record of the judgment below, as it could be recreated in proceedings before it, should be considered to determine whether Chateau-Real's award was, to some extent, an award for property damage. "The duty to indemnify on a particular claim is determined by the actual basis of liability imposed on the insured." (*Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1, 108 (*Armstrong*); accord, *Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 514 (*Howard*).) It is a long-standing principle that a judgment creditor may not raise claims concerning the nature of awarded damages that were unadjudicated in the underlying judgment. (*Rafeiro*, *supra*, 5 Cal.App.3d at p. 805.)

Chateau-Real believes that *Howard* demonstrates that a court may consider evidence that was not before the trier of fact in the underlying action. In *Howard*, the underlying lawsuit involved claims against a priest and his supervising bishop for damages suffered from the priest's molestation. (*Howard*, *supra*, 187 Cal.App.4th at p. 508.) American National Fire Insurance Company (American) had insured the bishop under a general liability policy from November 1978 to November 1979 and chose not to involve itself in the underlying lawsuit because it believed no molestation of the plaintiffs had occurred during that period. (*Id*. at pp. 508-509.) After a jury trial, the plaintiffs were awarded substantial compensatory and punitive damages. (*Id.* at p. 509.)

The *Howard* plaintiffs then filed a complaint against the bishop's insurers, including American, as judgment creditors. (*Howard*, *supra*, 187 Cal.App.4th at p. 511.) A settlement was reached with other insurers, but the claim against American proceeded to trial. (*Ibid*.) The parties agreed to a bench trial and the court determined that one of the plaintiffs was molested during the period in which American had insured the bishop. (*Id.* at pp. 511-512.) American was ordered to pay almost $3 million and appealed,

7

arguing that "the evidence presented *in the underlying litigation* failed to show that [the priest] abused [the plaintiff] during the 1979 policy period and that the court in this coverage action erred in considering evidence . . . not presented in that underlying litigation. American insist[ed] that the only evidence admissible in this coverage action is the evidence that was presented to the jury in the underlying litigation." (*Id*. at pp. 513, 514.)

The *Howard* court observed: "Insurance coverage and personal injury liability present distinct issues. 'Generally speaking, in an action by an injured party against the party who allegedly caused the injury the court does not adjudicate the issue of insurance coverage. The only questions litigated are the defendant's liability and the amount of damages. The plaintiff is not concerned with the theory of liability which produces victory; only with procuring the largest possible judgment. Similarly, the defendant is concerned only with avoiding, or at least minimizing, a judgment for the plaintiff. [Citation.] Whether the plaintiff's loss is covered by the defendant's insurance is not germane to the action, and evidence on that issue would be excluded as irrelevant.' [Citation.] The evidence presented in the underlying litigation is properly focused on questions of liability, not insurance coverage, and therefore does not necessarily dictate the scope of evidence in a later coverage action." (*Howard*, *supra*, 187 Cal.App.4th at p. 514.) The court affirmed the outcome of the trial court, ruling that evidence of the timing of the molestation was not improperly admitted, stating: "Plaintiffs were not required to prove molestation within the policy period in the underlying action. It is sufficient that plaintiffs proved to the jury that James was molested by a priest negligently retained by the Bishop (establishing a basis for liability encompassed by the policy) and later proved, in this coverage action, that the molestation occurred within the policy period." (*Id.* at p. 515.)

*Howard* does not assist Chateau-Real because the evidence that the court permitted was evidence concerning the fourth element in a section 11580 action, coverage, and not the first element, whether the underlying judgment was for bodily injury, death or property damage. That the *Howard* plaintiffs received a judgment for

8

bodily injury due to the molestation by the priest, who was negligently retained by the bishop, was never in question during the section 11580 action in *Howard*. As pointed out in *Howard*, "[t]he underlying litigation may also impact issues in the coverage litigation by application of the simple principle that the duty to indemnify 'is determined by the actual basis of liability imposed on the insured.'" (*Howard*, *supra*, 187 Cal.App.4th at p. 514.) We decline to extend *Howard* in a way that would place that simple principle in jeopardy. As the trial court observed: "There are peculiar consequences of plaintiffs' expansive reading of *Howard*. Where the basis of liability is inscrutable and by definition *nothing* suggests the award is covered by the policy—say, in an arbitration hearing without any record at all—plaintiffs would be free to re-litigate the entire underlying case to secure coverage in a [section] 11580 trial. That reading of *Howard* eviscerates the burden plaintiffs have in every [section] 11580 case . . . ."

Chateau-Real correctly observes that categorization of some of its claimed damages as property damage was not at issue in the underlying arbitration. But, as the trial court noted, this was under Chateau-Real's control, because there is no reason that it could not have alleged property damage and proved it during the arbitration: "An arbitration hearing which *might have* been litigated on proof of property damage is not for that reason one which *was* so litigated. [¶] Parties routinely litigate with insurance coverage in mind, pushing some theories of recovery and declining others, all in an effort to ensure that a resultant judgment will be collectible at least from an insurer."

We find no error or abuse of discretion in the trial court's determination that the question of whether the underlying arbitration award was, in part, for property damage, a matter to be determined solely from the record of the arbitration.

## III. *The Right to a Trial by Jury*

Chateau-Real contends that the trial court's ruling that its section 11580 cause of action would not be tried by a jury, despite its demand for a jury trial, violated its constitutional right to a trial by jury. This contention presents "a pure question of law that we review de novo." (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 23.)

9

A section 11580 action is an action at law for breach of contract. (*Interinsurance Exchange v. Savior* (1975) 51 Cal.App.3d 691, 694.) Section 11580 "makes the judgment creditor a third party beneficiary of the insurance contract between the insurer and the insured." (*Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 943.) Code of Civil Procedure section 592 provides: "[i]n actions . . . for money claimed as due upon contract, or as damages for breach of contract . . . an issue of fact must be tried by a jury, unless a jury trial is waived, or a reference is ordered, as provided in this Code." We conclude that Chateau-Real was entitled to a jury trial on any disputed issue of fact.

Here, the disputed issues were whether the underlying arbitration award was, in part, an award for property damage and, if so, whether the insurance contract covered that damage. The trial court determined that interpretation of the arbitration award and interpretation of the insurance contract were issues to be determined by the court and not by the jury—determinations that Chateau-Real does not dispute. Once the court also determined that testimony concerning additional facts that were not adjudicated as part of the original arbitration could not properly be heard in assistance of the court's interpretive task, there were no disputed issues of fact to present to a jury. Chateau-Real identifies no disputed issue of fact separate from the testimony that it sought to introduce concerning the nature of the damages awarded in the underlying arbitration.

The right to trial by jury is the right to have a jury determine a disputed issue of fact. (See Code Civ. Proc., § 592.) A motion for summary judgment "presents a risk of infringing on the opponent's rights—particularly the right to jury trial . . . ." (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 757.) However, when such a motion is properly granted, because no material, disputed issues of fact are presented, the right to a jury trial is not violated. (See *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 70 ["California and federal courts long ago agreed that nothing in the summary judgment procedure is inherently unconstitutional"].) Similarly, where, as here, the issues presented are tasks of judicial interpretation and not related to disputed issues of fact, a court does not violate a party's rights by conducting a bench trial instead of a jury trial.

10

Because we have found no error in the trial court's decision to disallow any evidence concerning the nature of damages that was not presented to the arbitrator, there were no disputed issues of fact for a jury to decide. Chateau-Real's constitutional rights were not infringed by the court.

## IV. *Consideration of Chateau-Real's Arbitration Briefs*

In determining that "the point of the arbitration was to recover for Pinewave's poor workmanship," the trial court emphasized the positions taken and arguments made in Chateau-Real's postarbitration brief that it submitted to the arbitrator. Chateau-Real contends that consideration of this brief was improper because "[s]tatements and arguments by counsel are not evidence." (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 139)

" 'Evidence' means testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." (Evid. Code, § 140.) Chateau-Real's argument fails to recognize that the court was not collecting evidence to resolve a factual issue, but was attempting to recreate the record of a judgment, and then interpret it. Courts routinely rely on the statements and arguments of counsel to make judicial determinations. At the trial level, a court determines whether to sustain or overrule an objection based on the grounds stated by counsel. At the appellate level, we routinely rely on the statements and arguments that counsel made in their briefs to the trial court to determine whether a particular issue has been preserved for appeal. Courts may also rely on trial briefs to determine what is actually at issue in an action before the court. (See, e.g., *Rafeiro*, *supra*, 5 Cal.App.3d at p. 802.)

Here, the task before the trial court was to determine the basis of Pinewave's liability that supported the arbitrator's award. " 'Where the judgment is ambiguous or fails to express the rulings with clarity, the entire record before the issuing court . . . may be referenced in determining what was decided.' " (*Muckleshoot Tribe v. Lummi Indian Tribe* (9th Cir. 1998) 141 F.3d 1355, 1359.) In the absence of an explicit statement by the arbitrator, the statements and arguments of Chateau-Real's trial counsel as to why the

11

arbitrator should find Pinewave liable must carry significant weight and it was proper for the trial court to consider them as part of its interpretive task.

## V. *Supporting Evidence*

Chateau-Real contends that the trial court's determination that the arbitration award was not for property damage was not supported by substantial evidence. This contention is dependent on our finding that it was improper for the trial court to consider the postarbitration brief that Chateau-Real submitted to the arbitrator—a finding that we rejected above. The trial court's consideration of Chateau-Real's postarbitration brief was proper and it provides substantial support for the trial court's finding.

In the postarbitration brief, as the trial court noted, Chateau-Real "told the arbitrator that the dispute was about Pinewave's 'faulty and incomplete construction,' [citation] 'substandard workmanship and inexcusable omissions' and 'poor workmanship.' [Chateau-Real] claimed repair costs to address 'each such instance.' [Citation] The repairs done, and those repairs contemplated for which [Chateau-Real] sought compensation, were necessitated by Pinewave's 'substandard work.' [Citation]" We have examined Chateau-Real's postarbitration brief and find no indication that Chateau-Real presented property damage as a basis on which the arbitrator should impose liability.

"Generally liability policies, such as the one in dispute here, are not designed to provide contractors and developers with coverage against claims their work is inferior or defective." (*Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, 967 (*Reeder*).) Claims of substandard workmanship and faulty construction are not incompatible with claims of covered property damage: "[W]here the defect in fact has caused either physical injury to or the lost use of tangible property, liability coverage has been found." (*Id.* at p. 970.) In *Reeder*, the insurance company sought a declarative judgment that it had no duty to indemnify the plaintiffs. (*Id.* at p. 966) The plaintiffs prevailed because they went "beyond allegations that defects in material and workmanship exist at the project" by making "allegations of physical harm to tangible property," including "cracked concrete floor slabs, foundations, retaining walls, interior

12

and exterior walls and ceilings and exterior concrete patio areas" due to soil subsidence. (*Id.* at pp. 970-971.) The *Reeder* court concluded that "the underlying plaintiffs have alleged property damage within the meaning of the insuring provisions of the Maryland policy." (*Id.* at p. 971.)

Unlike the *Reeder* plaintiffs, there is no indication that Chateau-Real made specific allegations of property damage or made any other allegation that necessarily included a finding of property damage in order for the arbitrator to find the allegation true.

Chateau-Real also complains that the trial court ignored substantial evidence of property damage. However, the trial court recognized that the arbitrator heard some evidence of property damage. *Rafeiro* demonstrates that this is irrelevant unless the decision in the underlying judgment entailed a finding of the truth of that evidence. In the underlying judgment of *Rafeiro*, a witness had testified to a " 'diminution in market value equivalent in amount to at least twice the costs of repair or replacement.' " (*Rafeiro*, *supra*, 5 Cal.App.3d at p. 803.) The underlying court's decision "awarded specific sums for specific defects without any allowance for diminution in value." (*Ibid.*) In a section 11580 action, the plaintiff sought payment from the insurance company, alleging that " 'as a direct result of the defects in the construction . . . [the apartments] suffered a diminution of market value in an amount equal to, if not more than, but certainly not less than, the proved reasonable cost of repairs as evidenced by the prior [j]udgment.' " (*Id.* at p. 804.) The *Rafeiro* court affirmed a grant of summary judgment in favor of the insurer, stating: "The issue in this case is not whether the apartments in fact suffered any diminution in value . . . , but whether the judgment, upon which plaintiff seeks to recover, represents damages of a type for which the insurer agreed to indemnify the contractor. . . . [Citations.] Her *subsequent unadjudicated claims concerning the nature of her damages* cannot affect the record made in the prior suit." (*Id.* at p. 805, italics added.) Even though the court in the underlying action had heard evidence of diminution in value, that evidence did not go to prove an adjudicated claim, because a finding of diminution in value was unnecessary to support the underlying judgment.

13

Similarly, here, Chateau-Real did present some evidence of property damage, but has not demonstrated that a finding of property damage was necessary to support the arbitrator's award.

We conclude that substantial evidence supports the determination of the trial court that Chateau-Real had not met its burden of proof in attempting to demonstrate that the underlying arbitration award was, at least in part, an award for property damage.

## VI. *Loss of Use*

The trial court acknowledged that Chateau-Real had "a further basis to argue that at least some of the underlying judgment includes damages comprehended by the policy" because the definition of "property damage" includes "an additional universe of damages, those for the 'loss of use' of tangible property (even in the absence of physical injury to it)." The arbitrator's award discusses the "calculation of loss of rents based upon the condition of the property, and the [a]ward arguably assesses loss of use damages as measured by the rents and interest award." The court then discussed application of the clause of the Everest policy that covers " 'Loss of use of tangible property that is not physically injured.' " and determined that this clause did not provide an alternative ground for coverage. Chateau-Real faults the court for failing to discuss another clause of the policy that defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property."

Chateau-Real's argument fails to take into account the structure of the trial court's statement of decision. The court first found that Chateau-Real had failed to meet its burden of proof to show that the arbitration award was for "property damage," under its definition as "physical injury to tangible property." Having reached that determination, loss of use as a result of such physical injury to tangible property was no longer in play as an avenue by which Chateau-Real could bring the arbitration award within the terms of the Everest policy. The only remaining way that the portion of the arbitration award for loss of rents could be brought within the terms of the Everest policy was via the clause covering loss of use of tangible property that is not physically injured, an avenue that the court considered and rejected. Thus, the court's analysis did not fail to take into account

14

all the possible ways that the award for loss of rents could be brought within the terms of the policy.

## VII. *Mitigation of Health and Safety Conditions*

Chateau-Real contends that "[u]nder California law, where defective work and products must be removed or repaired to address health or safety concerns, the presence of such problems constitutes 'property damage' under a commercial general liability insurance policy." The trial court carefully considered the cases that Chateau-Real cited in support of this proposition and found it too broad, concluding that costs incurred to mitigate health and safety concerns might be covered as property damage only if they are taken consequent to property damage of the type the incurred costs are intended to mitigate. Because Chateau-Real's argument was that such mitigation costs themselves constituted property damage, and not that they were taken to mitigate an occurrence or occurrences of property damage that had already taken place, the court concluded that Chateau-Real could not bring these costs within the terms of the Everest policy.

Chateau-Real first cites *Armstrong*, *supra,* 45 Cal.App.4th at pages 91-92, for the proposition that "the term 'physical injury' covers 'a loss that results from physical contact, physical linkage, as when a potentially dangerous product is incorporated into another and, because it is incorporated and not merely contained . . . must be removed, at some cost, in order to prevent the danger from materializing.' " The *Armstrong* court was dealing with the incorporation of asbestos-containing materials in a building and concluded that when the hazardous material "is physically touching and linked with the building, and not merely contained within it, the injury is physical even without a release of toxic substances into the building's air supply." (*Id.* at p. 92.) This is a far cry from Chateau-Real's assertion that the presence of any health or safety issue in a building constitutes a physical injury. None of the health or safety issues cited by Chateau-Real involves the presence of a hazardous material.[2]

---

[2] Chateau-Real asserts that Pinewood "incorporated hazardous components into the buildings." However, they cite no evidence of this. The health and safety issues listed by Chateau-Real include fire-safety related code violations, inoperable doors,

The *Armstrong* court noted that it was the physical incorporation of asbestos into the buildings that distinguished the case from the usual rule that " 'prophylactic' costs—costs incurred in advance of any release of hazardous waste, to prevent threatened future pollution—are not incurred because of property damage." (*Armstrong*, *supra*, 45 Cal.App.4th at p. 92.)

Chateau-Real next complains that "the trial court completely disregarded California Supreme Court authority stating that '[l]iability policies have been held to cover damages resulting from an act undertaken to prevent a covered source of injury from coming into action, even if that act would otherwise not be covered.' " (Quoting *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1025 (*Allstate*).) This citation is also a far cry from Chateau-Real's proposition that all health and safety defects represent property damage, requiring indemnification of mitigation costs.

All of the cases that *Allstate* cites in support of the quoted passage are cases in which the mitigation costs were incurred as a response to a prior occurrence of physical damage. In *Globe Indem. Co. v. State of California* (1974) 43 Cal.App.3d 745, 750-753, a fire was negligently started by the insured and the court held that the insurer must cover the insured's liability for fire suppression costs to prevent further damage to tangible property. In *Goodyear Rubber & Supply, Inc. v. Great American Ins. Co.* (9th Cir. 1976) 545 F.2d 95, 96, the insurer was held liable for salvage costs where the salvager had acted to prevent further damage from fire, a covered source of damage. In *AIU Ins. Co. v. Superior Ct.* (1990) 51 Cal.3d 807, 833, the mitigation costs were incurred due to "past and present damage to land and water."

Chateau-Real brings no case or argument before us that causes us to question the trial court's conclusion that costs to mitigate health and safety concerns, not taken in response to an incident of property damage related to those concerns, do not constitute "property damage."

---

safety issues with roof rails and decks, exposed wires on security gates, a gas leak, and stair-related safety issues.

16

**VIII.** *The Coverage Issue*

As an alternate ground for its judgment in favor of Everest, the trial court concluded that even if Chateau-Real had succeeded in proving that the arbitration award was, to some extent, for property damage, then that damage was not covered by the Everest policy due to the operation of one of the exclusions. In other words, even if Chateau-Real had proved the first element of a section 11580 action, it had not proved the fourth element—coverage. Chateau-Real argues that this conclusion was not supported by substantial evidence. Because Chateau-Real has failed to call the court's conclusions on the first element into question, we need not reach Chateau-Real's arguments on this alternate basis for the judgment.

## DISPOSITION

The judgment of the trial court is affirmed.

_____

Lambden, J.

We concur:

_____

Kline, P.J.

_____

Haerle, J.

17