61 F.3d 742
 95 Cal. Daily Op. Serv. 6278, 95 Daily Journal
D.A.R. 10,722
BELL LAVALIN INC., an Alaska Corporation, Plaintiff-Appellant,
v.
SIMCOE AND ERIE GENERAL INSURANCE COMPANY, a foreign
corporation; The Prudential Assurance Company, a foreign
Corporation; Security Insurance Company of Hartford, a
Connecticut Corporation; New Rotterdam Insurance Company, a
foreign Corporation; The Contingency Insurance Company,
Ltd, a foreign Corporation, et al., Defendants-Appellees.
 No. 93-36024.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 3, 1994.
Decided Aug. 9, 1995.
 
 Kenneth D. Jensen, Jensen, Harris and Roth, Anchorage, AK, for plaintiff-appellant.
 Liam J. Moran, Hagans, Brown, Gibbs and Moran, Anchorage, AK, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before: WOOD,* HUG, and TANG,** Circuit Judges.
 TANG, Senior Circuit Judge:
 
 
 1
 Simcoe and Erie General Insurance Co. et al. ("Simcoe") insured Bell Lavalin, Inc. ("Bell Lavalin") under a professional liability insurance policy. Bell Lavalin, the prime contractor of a North Slope Alaskan construction project, was sued by one of its subcontractors, Conam Alaska ("Conam"). The jury awarded Conam over $7,000,000 in damages. Bell Lavalin, through its receiver, sued Simcoe for indemnification. The district court granted summary judgment in favor of Simcoe. We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 I. BACKGROUND
 
 2
 F. Robert Bell & Associates ("Bell") and Lavalin, Inc. ("Lavalin") formed Bell Lavalin, an Alaska corporation, to perform engineering and construction work in Alaska. Simcoe insured Bell Lavalin under a primary and excess professional liability insurance policy.
 
 
 3
 In 1984, Bell Lavalin entered a contract with Atlantic Richfield Company ("ARCO") to design and construct four crude oil tanks on the North Slope of Alaska. Bell Lavalin subcontracted to Conam all construction services and materials necessary to construct the project.
 
 
 4
 As winter approached, the project quickly fell behind schedule. In August 1985, Bell Lavalin, ARCO, and Conam met to discuss scheduling proposals. Conam left the meeting with the understanding that it received a six-month extension. Later, Bell Lavalin reneged on the extension, forcing Conam to agree to only a one-month extension. Conam agreed, but stated its reservations about the feasibility of completion due to weather.
 
 
 5
 On November 15, 1985, Conam wrote to Bell Lavalin that further work on the project was commercially impracticable and proposed a revised schedule consistent with the original six-month extension. Bell Lavalin refused to grant Conam the previously promised time extension, stopped payment on a check for over $800,000.00, and directed Conam to continue working. On November 19, 1985, Conam stopped work and left the job site. The job was, at that point, 87% complete. Bell Lavalin terminated Conam and completed the project in March 1986.
 
 
 6
 Conam subsequently sued Bell Lavalin in Alaska state court. Upon receipt of Conam's complaint, Bell Lavalin tendered defense of the suit to Simcoe. Simcoe accepted, but on the condition that it was reserving its rights to later deny coverage. Simcoe sent the reservation of rights letter to attorney David Miller, who was not an authorized representative of Bell Lavalin. The reservation of rights letter also did not specifically deny coverage for pure contract claims.
 
 
 7
 Bell Lavalin selected Hugh G. Wade to represent the company. Simcoe paid part, but not all, of Wade's legal bills. Wade provided Simcoe with advance copies of pleadings and detailed litigation reports. Wade also took certain actions to minimize Simcoe's liability for coverage in the event Bell Lavalin lost at trial.
 
 
 8
 Conam's complaint alleged breach of contract, abandonment of contract, breach of duty of good faith and fair dealing, fraud, and negligent design and engineering. Conam also sought to pierce Bell Lavalin's corporate veil. Bell Lavalin counterclaimed, alleging four claims of breach of contract and one claim of willful interference with contract. The trial court dismissed Conam's fraud and professional negligence claims and Bell Lavalin's willful interference counterclaim.
 
 
 9
 At trial, the jury found against Bell Lavalin on its breach of contract counterclaims and for Conam on its breach of contract and abandonment of contract counts, awarding Conam $4,230,898.42.[1] The verdict represents the unpaid value of the performance rendered by Conam to the date it stopped working.
 
 
 10
 Following the Conam judgment, Bell Lavalin was forced into receivership. One of Conam's attorneys was appointed receiver for Bell Lavalin in order to identify the assets of Bell Lavalin and to satisfy the Conam Judgment. It is the receiver for Bell Lavalin that is pursuing the current action and is the appellant on appeal.
 
 
 11
 On August 14, 1992, the district court granted summary judgment in favor of Bell Lavalin, finding that the Simcoe policy covered the Conam judgment. On November 13, 1992, the Supreme Court of Alaska reviewed the trial verdict and established that the jury's verdict was based on contract damages and not on professional negligence. See Conam Alaska v. Bell Lavalin, Inc., 842 P.2d 148, 154-159 (Alaska 1992). In light of the Supreme Court of Alaska's decision, the district court on July 16, 1993 reversed its earlier grant of summary judgment and held that Simcoe's policy did not provide coverage for the Conam judgment.[2] On September 22, 1993, the court again granted summary judgment in favor of Simcoe, ruling that Simcoe was not estopped from denying coverage. The receiver for Bell Lavalin appeals.
 
 II. DISCUSSION
 
 12
 In this diversity action, Alaska state law governs the interpretation of the insurance policy and the applicability of estoppel. See Allstate Insurance Company v. Ellison, 757 F.2d 1042, 1044 (9th Cir.1985). Federal law governs the standard of review for summary judgment. See Id. In reviewing the district court's grant of summary judgment, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 A. COVERAGE UNDER THE SIMCOE POLICY
 
 13
 The relevant provision of Simcoe's policy provides:The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages if legal liability arises out of the performance of professional services for others in the Insured's capacity as an architect, an engineer, a land surveyor, a project manager, a construction manager, qualified inspectors, including but not limited to the following services: testing, inspecting, investigating, appraising, planning, and consulting, and if such legal liability is caused by an error, omission or negligent act.
 
 
 14
 Under this provision, Simcoe is liable if three requirements are met: (1) the judgment must be for "damages"; (2) the liability must arise out of Bell Lavalin's "performance of professional service for others in the Insured's capacity as ... a project manager"; and (3) the liability must be "caused by an error, omission or negligent act."
 
 
 15
 The appellant argues the policy provision is satisfied because Bell Lavalin, as project manager, erroneously or negligently breached the contract between Conam and Bell Lavalin when it refused to grant Conam a time extension. The appellant argues that "[i]t was the wrongful refusal to grant a time extension which resulted in the damages, and the verdict against Bell Lavalin."
 
 
 16
 The appellant mischaracterizes the source of the damages. The jury did not award damages based on Bell Lavalin's failure to grant a time extension; rather, the jury awarded damages based on the value of the unpaid work that Conam had already performed. At the time of Conam's demobilization of its work force, Conam had completed approximately 87% of its contract work. Conam Alaska v. Bell Lavalin, 842 P.2d 148, 152 (Alaska 1992). The jury's award of $4,230,898.42 constituted approximately 87% of the unpaid value of Conam's contract work. See id. The appellant concedes in its statement of facts that "[t]he verdict represents the unpaid value of the performance rendered by Conam to the date it stopped working."
 
 
 17
 Under the proper characterization of the source of the damages, the third requirement of Simcoe's policy is not satisfied because Bell Lavalin's refusal to grant a time extension was not the "cause" of the damages. As the district court noted, "[n]o damages were separately awarded" for the failure to grant a time extension. Rather, the cause of the damages is the simple fact that Conam performed 87% of its contract work for Bell Lavalin, and Bell Lavalin refused to pay. Bell Lavalin's failure to grant a time extension is irrelevant to the issue of whether Bell Lavalin owes Conam the value of the unpaid work. Indeed, even if Bell Lavalin had won on the underlying judgment regarding the time extension issue, it would still owe Conam the value of the 87% of the work performed by Conam (except that Bell Lavalin would then be entitled to offset any extra damages it suffered when it hired another subcontractor to complete the remaining 13% of the work).
 
 
 18
 Because the third requirement of the Simcoe policy provision is not satisfied,[3] we hold that the Simcoe policy does not provide coverage for the underlying judgment in favor of Conam. Any other interpretation of the Simcoe policy would violate the rule that "an insurance policy must be construed so as to 'provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language.' " O'Neill Investigations v. Illinois Employers Insurance of Wausau, 636 P.2d 1170, 1175 (Alaska 1981) (quoting Stordahl v. Government Employees Insurance Co., 564 P.2d 63, 65-66 (Alaska 1977)). No lay person could reasonably read Simcoe's policy and expect that it provides coverage for a simple contract dispute in which Conam performed work for which it was not paid. We now turn to whether Simcoe may nevertheless be liable under equitable estoppel.
 
 B. ESTOPPEL
 
 19
 The appellant argues Simcoe should be estopped from denying coverage for the Conam judgment because Bell Lavalin did not consent to Simcoe's allegedly invalid reservation of rights letter and because Simcoe controlled the defense of Bell Lavalin. In order to establish estoppel, four requirements must be met:
 
 
 20
 (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; (4) he must rely on the former's conduct to his injury.
 
 
 21
 O'Neill Investigations, Inc. v. Illinois Employer's Insurance of Wausau, 636 P.2d 1170, 1178 (Alaska 1981). The appellant cannot establish all the elements of estoppel.
 
 1. Simcoe's Reservation of Rights
 
 22
 The record indicates that Simcoe's conduct was consistent throughout the litigation with its position that simple breach of contract claims are not covered by the policy. There is no evidence that Simcoe intended to mislead Bell Lavalin into thinking Simcoe would provide coverage for all of Conam's claims. In its reservation of rights letter, Simcoe stated that its defense of Bell Lavalin "will be afforded only under a full reservation of any and all rights that Simcoe & Erie may have" based upon the policy provision regarding liability arising out of acts, errors or omissions in the performance of professional services. Thus, the second and third elements of estoppel--that Simcoe somehow hid the true facts and misled Bell Lavalin--is not satisfied.
 
 
 23
 The appellant argues, however, that Bell Lavalin never consented to the reservation of rights letter because the letter was sent to David Miller, rather than to Bell Lavalin's general counsel. Appellant's argument is meritless. Although Miller was not general counsel to Bell Lavalin, he was general counsel to Lavalin, Inc. He was the attorney who first forwarded to Simcoe the initial Conam complaint against Bell Lavalin. He also sent a letter to Simcoe acknowledging Simcoe's reservation of rights. The record indicates that much of the correspondence between Miller and Simcoe was copied and sent to Mr. Bell, president of Bell. Thus, both parts of the Bell and Lavalin partnership knew of the correspondence between Miller and Simcoe, and knew that Simcoe had made a reservation of rights.
 
 
 24
 Moreover, as the district court correctly noted,
 
 
 25
 [i]t is important to recognize that this action is brought by Conam, the receiver for Bell, and that no agent of Bell has ever objected to Simcoe's attempted reservation of rights....
 
 
 26
 District Court's Order, September 22, 1993, at 5 n. 3.
 
 The district court further observed:
 
 27
 Bell's principals were experienced business persons with access to independent counsel.... All of the evidence regarding the conduct of Bell's principals is consistent with consent, and no evidence points in the opposite direction.
 
 
 28
 District Court's Order, September 22, 1993, at 6 n. 4. To argue in this instance that Bell Lavalin did not consent because Simcoe's reservation of rights letter was not received by an "authorized representative of Bell Lavalin" is to twist the facts beyond recognition. Bell Lavalin cannot be said to have been "ignorant of the true facts."[4] See O'Neill, 636 P.2d at 1178.
 
 
 29
 The appellant next argues that the reservation of rights letter failed to provide a reasonable explanation of the basis for the denial of the claim. Although the reservation of rights letter did not technically state that pure contract claims would not be covered, it did cite to the relevant policy provision and informed Bell Lavalin that Simcoe was tendering a defense under a full reservation of any and all rights. Thus, Bell Lavalin was put on notice that Simcoe might contest coverage issues in the future.
 
 
 30
 Moreover, as the district court correctly noted,
 
 
 31
 "[n]o single piece of evidence such as the content of a reservation of rights letter is controlling. The issue to be determined is: Considering the totality of the evidence, could a reasonable jury conclude that Bell was mislead by Simcoe's actions and, in reliance on that misunderstanding, suffered prejudice? There is nothing in the record to suggest that any Bell principal claims that Bell was mislead or detrimentally relied on any act or omission of Simcoe."
 
 
 32
 Indeed, even viewing the evidence in the light most favorable to the appellant, the record indicates that Simcoe informed Bell Lavalin all along that the Simcoe policy might not cover a pure contract claim. In a letter dated November 28, 1985 from Simcoe to Miller, Simcoe stated that the Conam dispute "may be a contractual dispute and may not be necessarily be [sic] covered under the policy." Taken together, the November 28, 1985 letter and the reservation of rights letter indicate that Simcoe never intended to mislead Bell Lavalin into thinking it would provide coverage for simple contract disputes. The record also indicates that Bell Lavalin was not, in fact, misled and thus it did not suffer any "injury" by relying on Simcoe's conduct. We find no estoppel based on the alleged inadequacy of Simcoe's reservation of rights.
 
 2. The Actions of Defense Counsel
 
 33
 The appellant argues that the actions of defense counsel Hugh G. Wade estop Simcoe from denying coverage liability. The appellant contends that Wade's loyalty was to Simcoe and not Bell Lavalin, and that the inherent conflict of interest prejudiced Bell Lavalin. We disagree.
 
 
 34
 In Chi of Alaska v. Employers Reinsurance, 844 P.2d 1113 (Alaska 1993), the court stated:
 
 
 35
 The possibility of a conflict might be avoided in such cases if the insurance company were to offer its insured the right to retain independent counsel to conduct his defense, and agree to pay all the necessary costs of that defense. In that event, it would seem that the company should be entitled to reserve the right to later litigate an alleged policy defense.
 
 
 36
 Id. at 1118 (quoting Continental Insurance Co. v. Bayless & Roberts, Inc., 608 P.2d 281, 291 n. 17 (Alaska 1980)).[5] This is exactly what happened here: Bell Lavalin chose Wade as its attorney, and Simcoe agreed to pay Wade's legal fees under a full reservation of rights.[6]
 
 
 37
 In O'Neill, the court found there was no estoppel because, inter alia, "O'Neill was represented ... by attorneys of its own choice. Thus it cannot allege that it was denied the valuable right to select and retain its own counsel." O'Neill, 636 P.2d at 1179. Similarly here, Bell Lavalin was represented by Wade, an attorney of its own choice.
 
 
 38
 The appellant nevertheless argues that Wade's loyalty was to Simcoe because Wade provided litigation reports and confidential information to Simcoe. The appellant, however, does not point to any evidence that Bell Lavalin was prejudiced by Wade's litigation reports or Wade's release of allegedly confidential information. Wade himself stated that, although he felt he had a duty to keep Simcoe "advised about what was going on in the litigation," he "didn't think of [himself] as being Simcoe Erie's attorney or representative" and that he "assumed [his] duty was to Bell Lavalin...."
 
 
 39
 We find the district court's observations worth emphasizing:
 
 
 40
 There is nothing in the record to suggest that Mr. Wade was not competent to handle this kind of dispute, that his defense was not vigorous or that Bell suffered any prejudice as a result of that defense. While Wade was unable to upset Conam's judgment on appeal, he successfully fended off Conam's arguments for a greater recovery. He also defeated Conam's efforts to pierce the corporate veil and hold Bell's principals personally liable. There is nothing in the record to suggest that Wade tailored the defense to avoid coverage. The issues in the case were fairly straightforward. Bell does not point to anything in the record to suggest that an alternate defense would have been more successful. Finally, Bell does not point to any inside information relevant to coverage which Simcoe obtained from Wade over Bell's objection. In fact there is nothing in the record to suggest that Bell ever objected to Wade or any action that he took.
 
 
 41
 District Court's Order, September 22, 1993, at 6-7.
 
 
 42
 On appeal, the only specific prejudice the appellant alleges is Wade's objection to a form of judgment that stated the following:
 
 
 43
 Bell Lavalin, Inc., as construction manager and project manager erroneously failed and/or omitted to approve and grant Conam Alaska an equitable adjustment in the time for performance ... resulting in the commercial impracticability as found to exist by the jury....
 
 
 44
 The appellant argues that Wade objected to this form of judgment because it would have made Simcoe liable for coverage.
 
 
 45
 As noted in Part I, however, the source of the damages arose out of Conam's completion of 87% of its contract work for Bell Lavalin for which it was not paid. Whether Bell Lavalin was the "construction manager and project manager" and whether Bell Lavalin "failed and/or omitted to approve" a time extension is irrelevant to the fact that Bell Lavalin owed Conam the value of the unpaid work. Thus, even if Wade had not objected to the form of judgment, Simcoe would still not be liable for the damages that Bell Lavalin owed Conam.
 
 
 46
 We do not condone Wade's actions; however, we cannot hold that Wade's actions estop Simcoe from denying coverage when (1) no specific prejudice has been shown, (2) Simcoe informed Bell Lavalin of its reservation of rights, and (3) the conduct of Bell Lavalin's principals indicated consent.[7]
 
 
 47
 AFFIRMED.
 
 
 
 *
 Honorable Harlington Wood, Jr., Senior Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 **
 Judge Tang authored and circulated this opinion prior to his death
 
 
 [1]
 With interest, attorney's fees, and costs, the total judgment came to $7,291,103.48
 
 
 [2]
 The district court stated:
 On reconsideration, I recognize that summary judgment was entered on the assumption that breach of the promise to grant an extension was a covered claim because it derived from the professional responsibilities of the contract manager. The Supreme Court [of Alaska] makes it clear that breach of this promise was not an independent liability-creating incident because it did not generate any recovered damages. The damages affirmed by the Court were for Conam's performance under the contract, which preceded in time the decision to grant a [time extension].
 District Court's Order, July 16, 1993, at 1.
 
 
 [3]
 Since the Simcoe policy provides coverage only if all three requirements of the policy provision are satisfied, we need not discuss the first two requirements. We note, however, that the second requirement fails for the same reason that the third requirement fails: Bell Lavalin's legal liability arose out of Conam's performance of 87% of the contract work, not out of Bell Lavalin's failure to grant a time extension. Thus, the liability did not arise out of Bell Lavalin's "performance of professional service for others"; rather, the liability arose out of Bell Lavalin's receipt of professional services from Conam
 
 
 [4]
 Appellant's argument that Simcoe breached its fiduciary duty to Bell Lavalin "by failing to advise Bell Lavalin of the conflict of interest" is meritless because, as previously discussed in the text, Simcoe did advise Bell Lavalin both that it was tendering a defense based on a full reservation of rights, and that contract disputes may not be covered under the policy
 
 
 [5]
 The Chi court extended Continental's rationale to apply to both policy and coverage defense cases. Chi, 844 P.2d at 1118
 
 
 [6]
 Simcoe had considered retaining the Anchorage firm of Hughes, Thorsness, Gantz, Powell & Brundin to defend Bell Lavalin, but it acquiesced in Bell Lavalin's retention of Wade
 
 
 [7]
 Appellant's argument that quasi-estoppel applies to the instant case is meritless. Simcoe has not unconscionably asserted inconsistent positions during the litigation. See Wright v. State, 824 P.2d 718, 721 (Alaska 1992)