NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and American Guarantee & Liability Insurance Company, Plaintiff/Intervening Plaintiff,

v.

READY PAC FOODS, INC. and Taco Bell Corp., Defendant/Intervening Defendant.

Taco Bell Corp., Third–Party Plaintiff,

v.

St. Paul Fire and Marine Insurance Company, Third–Party Defendant.

No. CV 09–3220 RSWL (MANx).

United States District Court, C.D. California.

March 18, 2011.

1048

David C. Hungerford, Kevin G. McCurdy, Mary Plungy McCurdy, McCurdy & Fuller LLP, Menlo Park, CA, Eldon S. Edson, Jan L. Pocaterra, Katherine W. Kehr, Tam Trinh Glunt, Selman Breitman LLP, Los Angeles, CA, for Plaintiff/Intervening Plaintiff.

Jason Corbitt Wright, Philip Earl Cook, Jones Day, David G. Bayles, Robert C. O'Brien, Arent Fox LLP, Los Angeles, CA, C. Steven Tomashefsky, Stien Rayf and Harris LLP, Jeffrey B. Charkow, Robert J. Harris, Harris Winick LLP, Chicago, IL, for Defendant/Intervening Defendant.

Patricia Anne Daza, Wynn C. Kaneshiro, Brittany Elizabeth McLean, Weston & McElvain LLP, Janice Chiou, Rollings Hills Estates, CA, Richard C. Weston, Weston and McElvain LLP, Los Angeles, CA, for Third–Party Defendant.

C. Steven Tomashefsky, Stien Rayf and Harris LLP, Jeffrey B. Charkow, Robert J. Harris, Harris Winick LLP, Chicago, IL, David G. Bayles, Robert C. O'Brien, Arent Fox LLP, Los Angeles, CA, for Third–Party Plaintiff.

**AMENDED ORDER GRANTING PLAINTIFF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA [106], PLAINTIFF–IN–INTERVENTION AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY [114], AND THIRD–PARTY DEFENDANT ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S [117] MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

RONALD S.W. LEW, Senior District Judge.

On December 14, 2010, Plaintiff National Union Fire Insurance Company ("National Union"), Plaintiff–in–Intervention American Guarantee & Liability Insurance Company ("American Guarantee"), and Third–Party Defendant St. Paul Fire and Marine Insurance Company's ("St. Paul") Motions for Partial Summary Judgment came on for regular calendar before this Court. The Court having reviewed all papers submitted pertaining to these Motions and having considered all arguments presented to the Court, **NOW FINDS AND RULES AS FOLLOWS:**

The Court **GRANTS** Plaintiff National Union, Plaintiff–in–Intervention American Guarantee, and Third–Party Defendant St. Paul's Motions for Partial Summary Judgment.

## I. BACKGROUND

The insurance coverage action before this Court centers on the extent of several commercial liability insurers' obligations to pay the sum of damages that Ready Pac, the Defendant in the Los Angeles Superior Court Action, may become legally obligated to pay. The underlying action currently pending in the Los Angeles Superior Court concerns the extent of Ready Pac's liability, if any, for damages caused as a result of an E. coli outbreak that took place at Taco Bell restaurants in the northeastern United States in late 2006.

In late November-early December 2006, a food-borne illness outbreak (the "Outbreak") occurred in Taco Bell restaurants in New York, New Jersey, Delaware, and Pennsylvania that the Centers for Disease Control and Prevention ("CDC") determined to be caused by a particular strain of E. coli. According to the CDC, the Outbreak was most likely caused by E. coli contaminated shredded lettuce consumed at Taco Bell restaurants in the northeastern United States.

Taco Bell is the nation's leading Mexican-style fast food restaurant chain. Many of Taco Bell's products incorporate pre-washed, pre-shredded iceberg lettuce. In November and December 2006, Taco Bell purchased the pre-packaged, pre-washed, and pre-shredded lettuce used in Taco Bell restaurants in the northeastern United States exclusively from Ready Pac.

On November 30, 2009, Taco Bell filed suit in Los Angeles Superior Court against Ready Pac, as the likely supplier of the contaminated product, alleging Breach of Implied Warranty, Negligence, and Negligent Interference with Prospective Economic Advantage related to the Outbreak. The plaintiffs in the Los Angeles Superior Court Action include more than 500 Taco Bell franchisees claiming "property damage, bodily injury, as well as damages suf-

fered because of the decline in patronage at all Taco Bell restaurants" resulting from the Outbreak.

The declaratory relief action currently before this Court centers on the extent of several commercial liability insurers' obligations to pay the sum of damages that Ready Pac may become legally obligated to pay. Movants National Union, American Guarantee, and St. Paul seek partial summary judgment on the grounds that their respective insurance policies do not provide coverage for Taco Bell's economic loss arising out of an alleged decline in patronage at Taco Bell restaurants due to the E. coli outbreak ("Lost Patronage Claim"). On the other hand, Opponent Taco Bell contends that all three policies provide coverage for Ready Pac's liability, if any, for Taco Bell's Lost Patronage Claim.

During the period in which the Outbreak occurred, Ready Pac was insured by Plaintiff National Union with a commercial liability policy (the "National Union Policy"). The National Union Policy provides Ready Pac with coverage of $25 Million per occurrence and $25 Million in the aggregate.

Third–Party Defendant St. Paul issued to Ready Pac a second layer excess liability policy, providing Ready Pac with $25 Million in coverage (the "St. Paul Policy"). The St. Paul Policy is excess to the National Union Policy and "follows form" to the National Union Policy. St. Paul is a Third–Party Defendant in this insurance action, brought into the litigation by Intervening Defendant/Third–Party Plaintiff Taco Bell.

In addition to the commercial excess liability policy issued by National Union, and the second layer commercial excess liability policy issued by St. Paul, Plaintiff–in–Intervention American Guarantee issued Ready Pac a third layer excess liability policy (the "American Guarantee Policy"). The American Guarantee Policy is an excess policy that provides Ready Pac with $25 Million in coverage. The American Guarantee Policy also "follows form" to the National Union Policy. Taco Bell contends that all three Policies provide coverage for Ready Pac's liability, if any, for Taco Bell's economic loss arising out of an alleged decline in patronage at Taco Bell restaurants due to the E. coli outbreak.

Opponent Taco Bell has identified five different types of loss/injury it allegedly suffered as a result of the E. coli outbreak[1]. The Movants' Motions for Partial Summary Judgment currently before this Court relate only to Taco Bell's fifth category of loss for the alleged decline in patronage at Taco Bell restaurants as a consequence of the bodily injuries suffered by Taco Bell customers and property damage to Taco Bell food products. In particular, the issue currently before this Court is limited to resolving the legal question of whether the insurance policies issued to Ready Pac by Movants National Union, American Guarantee, and St. Paul cover the damages asserted by Opponent Taco

---

1. Taco Bell alleges five types of injury, damage or loss resulting from the E. coli outbreak: the lettuce provided by Ready Pac caused (a) bodily injury to customers at Taco Bell restaurants, (b) property damage to meals served at Taco Bell restaurants, including contamination of food and other items coming in contact with the contaminated lettuce as well as contamination of surfaces and equipment in the Taco Bell restaurants, (c) the destruction of other food and items based on concerns over their possible contamination, (d) losses suffered while Taco Bell restaurants were inoperable during the investigation, clean-up, and replacement of property damaged by the E. coli outbreak, and (e) losses suffered because of the decline in patronage at all Taco Bell restaurants as a consequence of the bodily injuries suffered by Taco Bell customers and property damage to Taco Bell food products. [Taco Bell's Answer and Counterclaim, 4:16–27.]

Bell for the decline in patronage at Taco Bell restaurants as a result of the E. coli outbreak.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  A genuine issue is one in which the evidence is such that a reasonable factfinder could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The moving party can satisfy this burden by:  (1) presenting evidence that negates an essential element of the non-moving party's case or (2) demonstrating that the non-moving party failed to establish an essential element of the non-moving party's case on which the non-moving party bears the burden of proving at trial.  *Id.* at 322–23, 106 S.Ct. 2548.

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the non-moving party to set forth facts showing that a genuine issue of disputed fact remains.  *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.  However, the non-moving party is required by Federal Rules of Civil Procedure, Rule 56(e) [2] to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *Id.* at 324, 106 S.Ct. 2548.  Conclusory allegations unsupported by factual allegations are insufficient to create a triable issue of fact so as to preclude summary judgment.  *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (citing *Marks v. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir.1978)).  A non-moving party who has the burden of proof at trial must present enough evidence that a "fair-minded jury could return a verdict for the [opposing party] on the evidence presented."  *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

### B.  Partial Summary Judgment

Federal Rules of Civil Procedure, Rule 56(a) enables a party to move for partial summary judgment.  Under Federal Rules of Civil Procedure, Rule 56(g), a court may enter an order stating any material fact-including an item of damages or other relief-that is not genuinely in dispute and treating the fact as established in the case.[3]  Fed.R.Civ.P. 56(g).  A partial summary judgment under Rule 56(g) is not a final judgment but rather an interlocutory summary adjudication or a pre-trial order, neither of which is appealable prior to the entry of a final judgment in the case in the absence of a specific statute authorizing an appeal.  *Wynn v. Reconstruction Fin. Corp.*, 212 F.2d 953, 956 (9th Cir.1954); Fed.R.Civ.P. 56(g).  Rule 56(g) allows a court to grant partial summary judgment, thereby reducing the number of facts at issue in a trial.  Fed.R.Civ.P. 56(g).  *See*

---

**2.**  The Federal Rules of Civil Procedure were amended on December 01, 2010.  Federal Rules of Civil Procedure, Rule 56(e) has now been codified as Federal Rules of Civil Procedure, Rule 56(c).

**3.**  The Federal Rules of Civil Procedure were amended on December 01, 2010, subsequent to the Movants filing their Motions for Partial Summary Judgment.  As such, the Movants relied on Federal Rules of Civil Procedure, Rule 56(d) in their papers, which has now been codified as Federal Rules of Civil Procedure, Rule 56(g).

*State Farm Fire & Cas. Co. v. Geary,* 699 F.Supp. 756, 759 (N.D.Cal.1987).

### C. The Declaratory Judgment Act

■ The Declaratory Judgment Act requires an actual controversy to exist between the parties before a court decides whether or not to consider the matter. 28 U.S.C. § 2201. To satisfy the "actual controversy" requirement of the Declaratory Judgment Act, courts look at whether the facts alleged, under all of the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).

## III. DISCUSSION

### A. The Movants' Request For Partial Summary Judgment Is Procedurally Proper

As an initial matter, the Court finds that the Movants' request for Partial Summary Judgment with regard to the Lost Patronage Claim only is procedurally proper under the recently amended Federal Rules of Civil Procedure, Rule 56. The Court finds that the Movants' request for Partial Summary Judgment with regard to the Lost Patronage Claim only is a request for adjudication on part of its entire claim for declaratory relief and therefore procedurally proper under Federal Rules of Civil Procedure, Rule 56(a).

Federal Rules of Civil Procedure, Rule 56(a) states that a party may move for summary judgment on the part of each claim or defense. Fed.R.Civ.P. 56(a). The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* Under Rule 56(d), now codified as Federal Rules of Civil Procedure, Rule 56(g), if the Court does not grant all the relief requested by the motion, it may enter an order stating any material fact, including an item of damages or other relief, that is not genuinely in dispute and treating the fact as established in the case. Fed.R.Civ.P. 56(g). Under Federal Rules of Civil Procedure, Rule 56(g), partial summary judgment or summary adjudication is appropriate as to specific issues if it will narrow the issues for trial. *See Watson Laboratories, Inc. v. Rhone–Poulenc Rorer, Inc.,* 178 F.Supp.2d 1099, 1123 (C.D.Cal.2001).

■ The Court also finds that the Movants' request for Partial Summary Judgment is ripe for review and that a controversy exists in this case so as to allow the Court to exercise jurisdiction under the Declaratory Judgment Act, despite the pending Los Angeles Superior Court Action. The Ninth Circuit has held that there is a "case or controversy" when an insurer brings a declaratory judgment action to establish whether it has a duty to defend and to indemnify, even when the underlying liability action has not yet proceeded to judgment. *See American States Ins. Co. v. Kearns,* 15 F.3d 142, 144 (9th Cir.1994).

■ Under California law, an insurer may seek declaratory relief on coverage issues while the underlying action is pending as long as the coverage question does not turn on facts to be litigated in the underlying action. *Montrose Chemical Corp. v. Super. Ct.,* 6 Cal.4th 287, 302, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). Here, the Court is not being asked to determine if Ready Pac is, in fact, liable for the Lost Patronage Claim, and the Court need not have made any such determination in ruling on these Motions for

Partial Summary Judgment. Rather, the Court is being asked to determine whether Ready Pac's potential liability under the Lost Patronage Claim would be covered through the underlying National Union Policy.

Accordingly, the Court finds that these Motions present a legal question of policy interpretation for the Court based on undisputed facts. The interpretation of an insurance policy is a question of law for the Court. *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1147 (9th Cir.1998). Partial summary judgment is appropriate where, as here, there are no material issues of fact and the controlling question before the Court is one of law. *Homestead Ins. Co. v. Ryness Co.,* 851 F.Supp. 1441, 1443 (N.D.Cal.1992).

**B. California Law Governs The Interpretation Of All Three Insurance Policies**

■ With regard to the choice of law, California law governs the interpretation of all three insurance policies at issue here. In a diversity action, the forum state's law governs the interpretation of the insurance policy. *Bell Lavalin, Inc. v. Simcoe and Erie Gen. Ins. Co.,* 61 F.3d 742, 745 (9th Cir.1995). Moreover, the general principles governing the interpretation of an insurance policy are well established. The California Supreme Court has previously held that the policyholder bears the burden of proving coverage under the insuring agreement of the policy. *Aydin v. First State Ins. Co.,* 18 Cal.4th 1183, 1188, 77 Cal.Rptr.2d 537, 959 P.2d 1213 (1998). In fact, generally the burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage. *Weil v. Fed. Kemper Life Assurance Co.,* 7 Cal.4th 125, 148, 27 Cal.Rptr.2d 316, 866 P.2d 774 (1994). And, once an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded.

*See Garvey v. State Farm Fire & Cas. Co.,* 48 Cal.3d 395, 406, 257 Cal.Rptr. 292, 770 P.2d 704 (1989).

While Intervening Defendant Taco Bell is not the insured under the National Union, American Guarantee, and St. Paul Policies, Taco Bell has intervened and seeks an adjudication that Defendant Ready Pac is entitled to coverage under all three Policies for Taco Bell's Lost Patronage Claim. Therefore, it is Taco Bell that bears the burden in this case of proving coverage.

■ Under California law, to resolve a question of insurance policy interpretation, the court performs an independent review, looking first to the language of the policy. *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). National Union issued commercial liability policy number BE 5191146 to Ready Pac for the period of April 01, 2006 to April 01, 2007 ("National Union Policy"). St. Paul issued an excess liability policy number QI02100125 to Ready Pac for the period of April 01, 2006 to April 01, 2007. The St. Paul Policy is an excess policy, which follows form to the underlying National Union Policy. Additionally, American Guarantee issued an excess liability policy number AEC 5086682 02 to Ready Pac for the period of April 01, 2006 to April 01, 2007. The American Guarantee Policy also follows the form of the National Union Policy.

"[E]xcess insurance provides coverage only upon the exhaustion of specified primary insurance." *Legacy Vulcan Corp. v. Super. Ct.,* 185 Cal.App.4th 677, 695, 110 Cal.Rptr.3d 795 (2010). A policy that incorporates the terms and conditions of another carrier's policy and provides the same scope of coverage as the underlying policy is a "follow form" policy that covers only those damages covered by the underlying policy. *Wells Fargo Bank v. Cal. Ins. Guar. Assn.,* 38 Cal.App.4th 936, 940,

45 Cal.Rptr.2d 537 (1995). Coverage for follow form policies is determined by evaluating whether the alleged damages are covered by the underlying policy. *See id.*

The controlling underlying insurance clause in the National Union Policy states that the insurer will pay on behalf of the insured "those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury ..." [Declaration of Frank Hager, ¶ 3, Ex. 1, at 0007.]

Moreover, the underlying National Union Policy defines bodily injury as "bodily injury, sickness or disease sustained by any person ..." [*Id.* at 0037.] Property damage, under the Policy, is defined as "physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the Occurrence that caused it." [*Id.* at 0027–28.]

### C. The Lost Patronage Claim Is Not A Claim For Damages Because Of Bodily Injury, Property Damage, Or Personal Injury And Advertising Injury

**i. Property Damage and Bodily Injury**

The issue before the Court is whether Taco Bell's claim for lost profits was "because of" covered property damage and bodily injury.

■ Opponent Taco Bell contends that but for the E. coli outbreak that caused bodily injury and property damage, it would not have suffered lost revenue and profits from a decline in patronage. Therefore, Taco Bell avers that the damages it seeks under the Lost Patronage Claim are "because of" the bodily injury and property damage caused by the E. coli outbreak. On the other hand, the Movants, that is the three insurance companies named in this action, assert that Taco Bell's Lost Patronage Claim is an economic loss claim that is not covered under the National Union Policy and rely on the California Supreme Court decision in *Geddes & Smith, Inc. v. St. Paul–Mercury Indemnity Co.*, 51 Cal.2d 558, 334 P.2d 881 (1959) ("*Geddes I*") to further this argument.

In *Geddes I*, the California Supreme Court interpreted a similarly worded commercial general liability policy, which required the insurer to indemnify the insured for losses incurred "because of injury to or destruction of property." *Id.* at 562, 334 P.2d 881. In that case, the insured supplied aluminum doors and was sued by a contractor who installed the doors on a number of houses, only to have the doors fail. *Id.* at 560–561, 334 P.2d 881. The contractor asserted various claims for expenses incurred in removing, installing, repairing, storing and shipping the doors, including office overhead and lost profit. *Id.* While the California Supreme Court allowed recovery for physical damage to the houses which resulted from the defective doors, it did not allow recovery for lost profits. *Id.* at 565, 334 P.2d 881.

The *Geddes I* court expressly rejected the insured's claim for lost profits and goodwill despite the existence of actual covered damage to tangible property. *Id.* at 566, 334 P.2d 881. The *Geddes I* court's decision supports the Movants' contention in this case that lost profits and goodwill are not damages because of damage to physical property. Moreover, the Court finds the Movants' reliance on two subsequent cases highlighting the principle outlined by *Geddes I* equally persuasive.

*Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 63 Cal.2d 602, 47 Cal. Rptr. 564, 407 P.2d 868 (1965) ("*Geddes II*") clarified that expenses incurred in ameliorating the damage to tangible property are covered because they are the measure of damage to tangible property. The *Geddes II* court held that loss from damage to intangibles is recoverable only to the extent that it provides a measure of damages to physical property which is within the policy's coverage. *Id.* at 609, 47 Cal.Rptr. 564, 407 P.2d 868. The *Geddes II* court found that overhead was recoverable under the policy because it provided a measure of the damages to the houses or the covered tangible property in that case. *Id.* "Overhead is distinguished from lost profits and goodwill in that it represents not a potential asset of the business but an essential expense incurred in the performance of the work." *Id.*

Applying this reasoning to the facts of this case, Taco Bell's claim for lost profits does not amount to "an essential expense incurred in the performance of the work" to remedy either the damage done to tangible property at Taco Bell restaurants or the personal injuries suffered by Taco Bell's customers. *Id.* at 609, 47 Cal.Rptr. 564, 407 P.2d 868. Taco Bell's claim for lost profits is not a measure of the damage to meals served at Taco Bell restaurants nor the cost of the destroyed contaminated food items. Taco Bell's alleged lost profits as a result of customers deciding not to eat at Taco Bell restaurants nationwide is not a measure of the value of the meals and food that were destroyed at Taco Bell restaurants directly affected by the Outbreak. Furthermore, Taco Bell's claim for lost profits from the decline in patronage is also not a measure of the costs incurred to clean up the Taco Bell restaurants affected by the Outbreak. The Court finds the Movants' reliance on an additional California Supreme Court decision in substantiating their position that economic loss claims

are not covered where such losses are not a measure of damage to physical property equally instructive.

In *Hogan v. Midland National Insurance Co.*, 3 Cal.3d 553, 91 Cal.Rptr. 153, 476 P.2d 825 (1970) ("Hogan"), the insured was sued for damages allegedly arising out of a defective saw it manufactured. The customers obtained a judgment for damages for lumber the saw cut too narrow, damages for lumber that was deliberately cut wider than necessary in order to prevent rejection from undercutting, damages for the cost of paying wages and other expenses for periods when the saw failed to operate and damages for the cost of leasing and cancelling a lease on a machine to be used in conjunction with the saw. *Id.* at 560, 91 Cal.Rptr. 153, 476 P.2d 825. Relying on *Geddes I* and *Geddes II*, the *Hogan* court concluded that there was no coverage for damages awarded for the cost of leasing and cancelling the lease on the machine that was to be used with the saw, holding that loss from damage to intangibles is recoverable only to the extent that it provides a measure of damages to physical property. *Id.* at 563, 91 Cal.Rptr. 153, 476 P.2d 825.

The Court finds the reasoning in the *Geddes* line of cases persuasive. Specifically, the Court finds that Taco Bell's claim for lost profits at the Taco Bell restaurants that were never shut-down during the E. coli investigation as a claim for purely economic loss, and not a measure of property damage or personal injury suffered by Taco Bell and its customers.

Intervening Defendant Taco Bell argues that the modern trend of cases are not in accord with the *Geddes* line of cases and therefore the *Geddes* line of cases are no longer controlling California authority. More specifically, Taco Bell relies on two cases, *AIU Insurance Co. v. Superior Court*, 51 Cal.3d 807, 274 Cal.Rptr. 820,

799 P.2d 1253 (1990) ("*AIU Insurance*"), and *Globe Indemnity Co. v. California,* 43 Cal.App.3d 745, 118 Cal.Rptr. 75 (1974) ("*Globe*") in substantiating this argument. However, the Court finds that Taco Bell's reliance on these authorities is misguided.

In fact, both of these cases are in line with the standard that intangible losses are recoverable if they provide "the measure of damages to physical property which is within the policy's coverage" as outlined by the court in *Hogan.* *Hogan,* 3 Cal.3d at 562, 91 Cal.Rptr. 153, 476 P.2d 825. In *AIU Insurance,* the damages sought by the government were expenses for cleanup and response costs incurred under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). *AIU Ins.,* 51 Cal.3d at 813–14, 274 Cal.Rptr. 820, 799 P.2d 1253. Those damages equated to the "measure" of the harm recoverable for the damage to tangible property. In *Globe,* the California Court of Appeal permitted an insured to recover for the amount he was required to pay the city for negligently causing a fire. *Globe,* 43 Cal.App.3d at 752, 118 Cal.Rptr. 75. The *Globe* court allowed recovery because the amount paid was the measure of "expenses incurred in mitigation of damages to tangible property."[4] *Id.*

Here, Taco Bell's Lost Patronage Claim against the Movants in this case is not for economic expenditures incurred by Taco Bell in mitigating damages as a result of the Outbreak. Moreover, while the existence of covered property damage and bodily injury is not disputed in this declaratory relief action, the mere existence of covered property damage does not permit recovery for Taco Bell's lost profits. In fact, courts have repeatedly declined to

extend commercial general liability coverage to purely economic injuries, even when covered property damage or bodily injury claims have been successfully asserted. *See Geddes,* 51 Cal.2d at 566, 334 P.2d 881; *Hogan,* 3 Cal.3d at 562, 91 Cal.Rptr. 153, 476 P.2d 825.

Additionally, the California Supreme Court's more recent cases regarding the extent of coverage under a commercial general liability policy make clear that the *Geddes* line of cases remain good law. *See Montrose,* 6 Cal.4th at 302, 24 Cal.Rptr.2d 467, 861 P.2d 1153. In *Montrose,* the California Supreme Court distinguished *AIU Insurance* from the *Geddes* line of cases in ruling that "a suit seeking recovery for injuries to intangible economic interests is not a suit 'of the nature and kind' covered by a CGL policy, whereas environmental contamination alleged under CERCLA is 'property damage' within the meaning of such a policy." *Id.*

Moreover, the California Supreme Court has consistently held that suits for lost profits and loss of goodwill equate to intangible loss and therefore not generally covered under a commercial general liability policy. *See Waller,* 11 Cal.4th at 26–27, 44 Cal.Rptr.2d 370, 900 P.2d 619. *See also Kazi v. State Farm Fire & Cas. Co.,* 24 Cal.4th 871, 879, 103 Cal.Rptr.2d 1, 15 P.3d 223 (2001). The Court finds that under California Supreme Court case precedent, Taco Bell's lost profits and loss of goodwill claim due to the decline in patronage at Taco Bell restaurants does not fall within the definition of "property damage" nor are such losses "because of property damage." The lost revenue that Taco Bell seeks to recover through its Lost Patron-

---

4. Given the strength of controlling California case law regarding the denial of recovery for lost profits under a commercial general liability policy, the Court finds Opponent Taco Bell's reliance on decisions from other cir-

cuits such as *Wausau Underwriters Insurance v. United Plastics Group,* 512 F.3d 953 (7th Cir.2008) and *Aetna Casualty & Surety Co. v. General Time Corp.,* 704 F.2d 80 (2d Cir.1983) unpersuasive.

age Claim is similar to the loss of profits and the loss of goodwill damages that were at issue in *Geddes I.* The Court finds that such losses are intangible and do not equate to property damage as outlined in the underlying National Union Policy.

■ Furthermore, California law makes clear that the occurrence itself must directly cause the bodily injury, the injury to tangible property, or the loss of use of the property for coverage to apply. *American Internat. Bank v. Fidelity & Deposit Co.,* 49 Cal.App.4th 1558, 1569, 57 Cal.Rptr.2d 567 (1996). As such, damages for loss of goodwill and loss of anticipated profits are not covered under a liability policy even where such loss of goodwill and loss of profits are alleged to have resulted from covered "property damage." *Geddes,* 51 Cal.2d 558, 334 P.2d 881; *Liberty Mutual Ins. Co. v. The Consolidated Milk Producers' Ass'n,* 354 F.Supp. 879 (D.C.N.H. 1973).

With regard to the argument for coverage because of the loss of use of tangible property, Taco Bell concedes that the Lost Patronage Claim is not a claim for damages because of loss of use of property that has not been physically injured. Given Taco Bell's position, the Court need not determine whether Taco Bell suffered a loss of use of Taco Bell restaurants because of the decline in patronage at the Taco Bell restaurants after the E. coli outbreak.

Additionally, the Court finds that Taco Bell's argument that the Policies afford coverage for the alleged decline in patronage as damages flowing from the covered "bodily injury" claims is without merit. Taco Bell's interpretation and argument that "because of bodily injury" substantiates coverage for its Lost Patronage Claim expands the coverage of the policy so as to provide coverage for almost any liability where bodily injury is a factor. Courts from other jurisdictions have previously determined that there is no coverage for economic losses "because of bodily injury" under the "bodily injury" portion of a liability policy. *See Diamond State Ins. Co. v. Chester–Jensen Co., Inc.,* 243 Ill.App.3d 471, 183 Ill.Dec. 435, 611 N.E.2d 1083, 1088 (1993). *See also Atlantic Mut. Ins. Co. v. Roffe, Inc.,* 73 Wash.App. 858, 862, 872 P.2d 536 (Wash.Ct.App.1994). Accordingly, the Court finds these cases particularly instructive in supporting its ruling that Taco Bell's Lost Patronage Claim is not a claim for damages because of bodily injury.

### ii. Personal Injury And Advertising Injury

Taco Bell does not assert that its Lost Patronage Claim constitutes damages because of "personal injury and advertising injury." As such, the Court need not decide whether Taco Bell is entitled to coverage for lost profits because of personal injury and advertising injury as defined under the controlling National Union Policy.

In sum, the Court finds that Taco Bell has not met its burden of proving coverage under the underlying National Union Policy for its Lost Patronage Claim. *See Aydin,* 18 Cal.4th at 1188, 77 Cal.Rptr.2d 537, 959 P.2d 1213. *See also Weil,* 7 Cal.4th at 148, 27 Cal.Rptr.2d 316, 866 P.2d 774. California Supreme Court case precedent declining coverage for economic injuries supports this Court's finding that Taco Bell's lost profits and loss of goodwill claim due to the decline in patronage at Taco Bell restaurants are not losses "because of property damage and bodily injury" and therefore not subject to coverage under the primary National Union Policy.

As the Court finds that Taco Bell has not met its initial burden of proving coverage for the Lost Patronage Claim under the primary National Union Policy, the Court need not review the merits of the

parties arguments under the exclusion claim. Once an insured has met its burden of proving coverage, the burden is then on the insurer to prove the claim is specifically excluded. *See Garvey v. State Farm Fire & Cas. Co.*, 48 Cal.3d 395, 406, 257 Cal.Rptr. 292, 770 P.2d 704 (1989). *See also Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978).

## IV. CONCLUSION

For the reasons stated above, the Court finds that there is no triable issue of material fact regarding Taco Bell's Lost Patronage Claim and **GRANTS** Plaintiff National Union, Plaintiff–in–Intervention American Guarantee, and Third–Party Defendant St. Paul's Motions for Partial Summary Judgment. The Court finds as a matter of law that Taco Bell's Lost Patronage Claim amounts to a claim for economic loss and is therefore not covered under the commercial liability policies issued to Defendant Ready Pac by National Union, American Guarantee, and St. Paul.

The Court finds that National Union Policy number BE 5191146 does not cover Ready Pac's liability, if any, for the losses identified in paragraph 16(e) of Intervenor Taco Bell's counterclaim in this action and the losses identified in paragraphs 575(1), 588(1), and 596(1) of Taco Bell's complaint in the action entitled *Taco Bell Corp., et al. v. Ready Pac Produce, Inc.*, et al., Los Angeles County Superior Court Case No. BC 427015 ("Los Angeles Superior Court Action")—the loss in revenue and associated profit because of the decline in patronage at Taco Bell restaurants as a consequence of the E. coli outbreak alleged in Taco Bell's counterclaim.

Additionally, the Court finds that American Guarantee and Liability Insurance Company Policy number AEC 5086682 02, does not afford coverage for liability, if any, imposed in the Los Angeles Superior Court Action for damages allegedly suffered by Taco Bell, its affiliates, and certain of its franchisees "because of the decline in patronage" at Taco Bell restaurants which, during the investigation of a 2006 E. coli outbreak and thereafter, were fully operational and open for business.

Moreover, the Court finds that Third–Party Defendant St. Paul has no duty to indemnify Ready Pac under Policy number QI02100125, with respect to any losses incurred due to the decline in patronage at Taco Bell restaurants resulting from the E. coli outbreak at Taco Bell restaurants in November and December 2006. Moreover, the Court finds that St. Paul has no obligation to reimburse Taco Bell or contribute toward any settlement or judgment under the St. Paul Policy or in the Los Angeles Superior Court Action for any losses incurred due to the decline in patronage at Taco Bell restaurants resulting from the E. coli outbreak.

The Court finds that St. Paul has no obligation to contribute toward any settlement or judgment in the *Taco Bell Corp. et al. v. Ready Pac Foods, Inc. et al.*, Los Angeles Superior Court, Case No. BC427015 ("Los Angeles Superior Court Action") for any losses incurred due to the decline in patronage at Taco Bell restaurants resulting from the E. coli outbreak. Additionally, the Court finds that St. Paul has no duty to indemnify Ready Pac, reimburse Taco Bell, or contribute toward any settlement or judgment in the Los Angeles Superior Court Action for any losses incurred due to the decline in patronage at Taco Bell restaurants which were not closed down due to the E. coli outbreak.

Furthermore, the Court finds that St. Paul has no duty to indemnify Ready Pac, reimburse Taco Bell, or contribute toward any settlement or judgment in the Los Angeles Superior Court Action for any

losses incurred due to the decline in patronage at Taco Bell restaurants located outside the states of New Jersey, New York, Pennsylvania, and Delaware resulting from the E. coli outbreak. The Court finds that St. Paul has no duty to indemnify Ready Pac, reimburse Taco Bell, or contribute toward any settlement or judgment in the Los Angeles Superior Court Action for any losses incurred due to the decline in patronage at Taco Bell restaurants that were not physically exposed to any contaminated lettuce during the E. coli outbreak.

Lastly, the Court finds that St. Paul has no duty to indemnify Ready Pac, reimburse Taco Bell, or contribute toward any settlement or judgment in the Los Angeles Superior Court Action for any losses incurred due to the decline in patronage at Taco Bell restaurants whose operations were not restricted by health and government officials during the investigation of the E. coli outbreak.

**IT IS SO ORDERED.**